## DOTTENHEIM et al. v. EMERSON ELECTRIC MFG. CO.
### Civil Action No. 7072.

District Court, E. D. New York.

April 16, 1948.

See also 7 F.R.D. 343.

Milton Pollack, of New York City, for plaintiff Dottenheim.

Crawford & Parsons, of New York City (J. Lester Parsons, Jr. and H. Victor Crawford, both of New York City, of counsel), for defendant.

GALSTON, District Judge.

The plaintiff, Dottenheim, sues alleging that he was and is a stockholder of the defendant. His claim is that W. Stuart Symington was the president and a director of the defendant, and that within a period of six months, ending on December 18, 1944, Symington purchased 20,000 shares of the common stock of the defendant at a price of $4 a share, and sold 4,000 of such shares, realizing a profit of $57,872. It is alleged that under the Securities Exchange Act of 1934, § 16 (b), 15 U.S.C.A. § 78p (b), such profit inured to and was recoverable by the defendant. Dottenheim alleges that under the provisions of that statute he was empowered to investigate any and all transactions of officers and directors of the defendant in securities of the defendant for the purpose of determining whether such transactions were within the framework of the statute; that he requested the defendant to commence suit for the recovery of the profits. Prior to the demand he employed Morton Frederick, an attorney, to make an investigation, and Dottenheim alleges that he agreed to pay Frederick a reasonable fee for his services "contingent upon a benefit therefrom to the corporation, and upon the reimbursement to the plaintiff * * * by the corporation of the said fees so incurred."

It is the allegation of the plaintiff that after he had made demand that the defendant commence suit against Symington, and solely by reason thereof, the defendant notified Symington of the demand, and that in consequence on or about February 15, 1946, Symington paid the profits to the defendant.

So by this action plaintiff seeks to recover the expenses of counsel "contingently undertaken and incurred."

A second cause of action alleged in the complaint was dismissed by Judge Inch on motion. D.C., 7 F.R.D. 195.

The plaintiff's claim is resisted on several counts, as will hereafter appear.

The proof discloses that W. Stuart Symington entered the employ of the defendant in 1938 under a contract which called for a salary plus additional compensation in the form of options to purchase common stock of the defendant. Pursuant to the terms of the option that he held, Mr. Symington notified the defendant that he desired to purchase 20,000 shares of the common stock at $4 a share. The purchase was consummated on December 14, 1944. To raise part of the purchase price Symington obtained a bank loan, and to reduce this loan he sold 4,000 shares of the stock at $19 a share on December 18, 1944. In so doing he acted in good faith and no imputation otherwise is shown. W. S. Snead, vice president and treasurer of the company, was informed of the purchase either before or immediately after it occurred, and early in January, 1945, Robert H. McRoberts, a director and secretary of the company, and a member of the law firm representing the defendant, was also informed thereof. Other directors were informed of the matter. Indeed McRoberts was not only counsel for the company, but also was Symington's counsel. Members of the company's law firm then discussed the situation in the light of the decision in Smolowe v. Delendo Corporation, 2 Cir., 136 F.2d 231. They were of opinion that the language of that decision was so broad that it would probably be held to cover the Symington purchase and sale. Judge Cave, a member of the law firm, was concerned lest the directors be held liable in the event that the company failed to take steps to recover the profits before the two year limitation period defined in the statute should expire. The directors reached the conclusion that the company would not immediately press the claim against Symington, but would see if some decision might be handed down modifying the broad language of Smolowe v. Delendo, supra. In July, 1945, Mr. Symington resigned as president to enter the services of the federal government, and in January, 1946, was appointed Assistant Secretary of War for Air.

In respect to the company's stand, the question was thus left with the board of directors to determine what action should be taken. Before any action was taken, however, on December 17, 1945, the company's New York office received a letter from the attorney for Dottenheim, setting forth that he had learned that Symington had received a profit of approximately $60,000 through a short term transaction in the company's stock, and requesting that the company demand such profit from Symington, or otherwise bring action under Sec. 16b of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p (b). Thereafter Symington paid the amount involved to the company, on February 15, 1946.

Though there have been actions brought by stockholders against recalcitrant corporations pursuant to the provisions of the act in question, there is no report of a suit, as in the case at bar, of an action by a stockholder against the corporation for a sum of money to enable him to pay a contingent fee to an attorney for a mere investigation of the facts involved.

All of the facts concerning the purchase and sale by Symington set forth in the Frederick letter of December 14, 1945, were known to the corporation. What then was contributed by the plaintiff? Well, at most the letter acted as a spur to the corporation to demand payment from Symington. As a matter of law though, with the data already in possession of the defendant prior to the Frederick letter, under the section of the statute in question the corporation had two years after the date when Symington realized the profit of December 18, 1944 within which to bring action against him, if within that time he had failed to make the payment to the corporation. The short of the matter is then what may be characterized as the effect of the Frederick letter was that the corporation without suit received the sum of money on February 15, 1946, though there is nothing in the record to show that the money would not have been paid at some time prior to December 18, 1946. Hence at most the contribution of the plaintiff was to enable the corporation without suit to have the use of $57,872 from February 15, 1946, until December 18, 1946, a matter of ten months. Assuming that the corporation could have invested that sum at 4%, which in the light

of present day interest seems a liberal figure, that sum would have earned interest amounting to $1,929.05.

The reason for the delay by the corporation in pressing the demand prior to the receipt of Frederick's letter is fully explained. The record shows that the directors of the corporation had given earnest consideration to the decision in Smolowe v. Delendo Corporation, supra. From the deliberations of the directors among themselves, they determined that they would not urge pressing the claim in the early part of 1945, but would wait to see if some later decision might be handed down by the courts which would provide an exception covering the specific facts of the Symington problem. Whether the directors were wise in so doing is questionable, but their good faith certainly cannot be doubted.

The defendant urges that this is not a stockholder's derivative action, but is merely a claim made for expenses—contingent—in serving a demand and furnishing information already fully known to the directors. During the pendency of the case, and before trial, the defendant moved to dismiss the complaint on the ground that it failed to state a cause of action. Judge Inch denied the motion, finding the complaint sufficient. D.C., 7 F.R.D. 195. At the trial, however, it appears that all the allegations of paragraph 10 of the complaint were not proved, for referring to the Frederick letter, paragraph 10 alleges: "After receipt of such demand and information from said stockholder, Lawrence B. Dottenheim, and *solely by reason thereof*,* the defendant received and accepted the benefit of said services, etc." As has been said, the information was already in the possession of the directors of the corporation. I agree with Judge Inch, however, that on the proof it would appear that the corporation did benefit at least to the extent of receiving an earlier payment of the fund in question than would have been made had there been no demand by the plaintiff.

To what extent such services shall be compensated is not to be determined by any hard and fast formula. Certainly

the statute is silent on the subject. The amount of work and the time involved in the performance of the service by Frederick were not great. The plaintiff's interest was, of course, purely nominal, for he was the owner of but 100 shares of common stock out of a total issue of 480,000 shares, and his motive in engaging an attorney, therefore, was practically altrustic.

In all the circumstances of the case, an allowance of $1,000 I regard as a substantial fee for the services.