Paul MAGIDA, a stockholder of the Vulcan Detinning Company, etc.,
Plaintiff,

v.

CONTINENTAL CAN COMPANY,
Defendant.

United States District Court
S. D. New York.

Sept. 6, 1956.

Morris J. Levy, New York City, for plaintiff (petitioner herein).

Mark F. Hughes, New York City (Willkie, Owen, Farr, Gallagher & Walton, New York City, and Vincent R. Fitzpatrick and H. Bartow Farr, Jr., New York City, of counsel), for defendant Continental Can Co.

Lawrason Riggs, New York City, Riggs, Ferris & Geer, New York City, for defendant Vulcan Detinning Co.

RYAN, Chief Judge.

Following affirmance of the judgment for plaintiff in right of the Vulcan Detinning Company (awarding profits plus interest in a Section 16(b) suit) plaintiff's attorney has filed a petition for an allowance for his services in the amount of $23,500 or 50% of the fund recovered including interest and for reimbursement of $431.51 expenses advanced by him.

He has submitted, and its accuracy is not disputed, a detailed account of the services rendered in the successful prosecution and appeal of this suit. There is no doubt that through his efforts alone approximately $47,000 has been recovered for the benefit of Vulcan.

█ Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p, makes no provision for an attorney's allowance but it is well settled that the party who benefits—the corporation—should pay the expenses incurred on its behalf by the stockholder. Here, however, both Vulcan and Continental object to the allowance sought: Continental on the ground that no true attorney-client relationship exists between petitioner and plaintiff Magida because Magida was the tool and dummy of the attorney who is the real party in interest. It points to the infinitesimal interest of Magida in the outcome of the suit as compared with the risk of having to pay costs many hundred times that interest, if unsuccessful, as forcing the conclusion that the action was financed by petitioner and brought for the sole purpose of enabling him to earn a fee—all in violation of the New York Penal Law, the Canon of Ethics and public policy. In support of its position, Continental has submitted several exhibits and has asked that it be permitted to examine plaintiff should the court hold a hearing on this matter. Vulcan makes no offer of proof, but it does ask that these accusations be taken into account in determining the amount of the

allowance and objects, in any event, to the amount requested as excessive.

█ I have accepted, read and considered the documents submitted by Continental as exhibits and affidavits in opposition to this petition solely in order that in the event of an appeal there may be a complete record. My doing so is not to be construed as a determination, *sub silentio*, that Continental has standing to be heard on this application. On the contrary, I find that it has not, for it pays no part of the fee and its role in this action terminates with satisfaction of the judgment. Moreover, as a majority stockholder who profited at the expense of its corporation it can hardly be heard to urge that the action which resulted in benefit to the corporation should go unrewarded; its attack on plaintiff's motives under the circumstances comes with ill grace. Watkins v. Sedberry, 261 U.S. 571, 43 S.Ct. 411, 67 L.Ed. 802; Steinfeld v. Zeckendorf, 15 Ariz. 335, 138 P. 1044, affirmed 239 U.S. 26, 36 S.Ct. 14, 60 L.Ed. 125; Merle v. Beifeld, 275 Ill. 594, 114 N.E. 369. The same remarks may apply, though to a lesser extent, to Vulcan. True, any allowance will come out of the moneys recovered by it, but it has benefited substantially by reason of petitioner's efforts irrespective of the motive prompting them—efforts which Vulcan refused to make in order to recover moneys belonging to it.

█ Undoubtedly, this court has the power to investigate and determine whether petitioner has been guilty of such misconduct as to justify withholding the granting of a fee. In this case, however, I think a hearing would accomplish nothing. There is no direct proof of a champertous agreement; the retainer of petitioner was oral and although it is very likely that petitioner did pay the expenses of the suit in return for his retainer and fee, I have reluctantly come to the conclusion that the probable existence of such conduct in these suits should not bar the attorney from receiving an allowance.

The cry that suit is being brought for the benefit of the attorney only is raised in the majority of these actions (Pellegrino v. Nesbit, 9 Cir., 203 F.2d 463, 37 A.L.R.2d 1296; Smolowe v. Delendo Corporation, 2 Cir., 136 F.2d 231, 241, 148 A.L.R. 300; Craftsmen Finance & Mortg. Co., v. Brown, D.C., 64 F.Supp. 168), yet I have had no case cited to me, nor have I found any where the Court took it upon itself to inquire into the circumstances surrounding the purchase of the stock or the arrangement between the stockholder and his attorney. That no court has done so appears consistent with the interpretation placed on the statute and the obvious purpose of Congress in enacting Sec. 16 (b). In this type of suit the wronged corporation is the real party in interest and the plaintiff but its representative who has been empowered to right the wrong done; the services of the attorney who successfully sues are deemed to have been rendered to the corporation, who having received the benefit of them should pay the reasonable value thereof. See Smolowe v. Delendo Corporation, supra. The fact that the statute leaves its enforcement to an individual, rather than to an administrative agency or a public official, and that it imposes no restriction on the capacity of the individual other than that he be a stockholder at the time of suit, is in effect an open invitation to any one who has knowledge of a short-swing profits transaction to go out and purchase a minimal share for the sole purpose of suing. Of course it is necessary that such purchaser be able to enlist the aid of an attorney—which he cannot do without holding out the allure of generous compensation. Whatever the ethics of the situation, the purpose of the statute is thus fulfilled. Presumably Congress is aware of the opportunity presented to attorneys to finance suits for their benefit, but apparently it regards public policy against proved and repeated violations of fiduciary responsibility by corporate officers at the expense of the public more detrimental to public good than the violation of generally accepted ethics by attorneys. The personal feelings of the court on the subject aside, its duty is to aid in the enforcement of the statute by encouraging such suits and by making an allowance which is not "too niggardly" and which will often provide "the sole stimulus for the enforcement of § 16(b)." Smolowe v. Delendo Corporation, supra [136 F.2d 241]; Dottenheim v. Emerson Elec. Mfg. Co., D.C., 77 F.Supp. 306; Murphy v. North American Light & Power Co., D.C., 33 F.Supp. 567. See, also, Unfair Use of Corporate Information by Rubin & Feldman, 95 U. of Pa.L.Rev. 468; Counsel Fee Awards by Hornstein, 69 Harv.L.Rev. 658; Insider Trading by Cook & Feldman, 66 Harv.L.Rev. 385. It is for the Congress, if it sees fit, to curb the evil side effects of the statute by imposing appropriate restrictions.

Petitioner has rendered services which were both necessary and beneficial to The Vulcan Company; he personally conducted the entire suit from its inception to the opposing of a petition for a writ of certiorari to the Supreme Court. The amount sought however is too high and I feel that an allowance of $12,000 to include disbursements is fair and adequate. Petition granted as indicated herein; settle order.