Isadore BLAU and Morris J. Levy,
Plaintiffs-Appellants,

v.

RAYETTE–FABERGE, INC., Defendant-
Appellee.

No. 171, Docket 31674.

United States Court of Appeals
Second Circuit.

Argued Nov. 21, 1967.

Decided Feb. 8, 1968.

Morris J. Levy, New York City, for
plaintiffs-appellants.

George Weisz, New York City (Cleary,
Gottlieb, Steen & Hamilton, Edmund H.
Kerr, New York City, on the brief), for
defendant-appellee.

Before LUMBARD, Chief Judge, and
MOORE and FEINBERG, Circuit Judg-
es.

**470**

FEINBERG, Circuit Judge:

In Gilson v. Chock Full O'Nuts Corp., 331 F.2d 107 (2d Cir.1964) (*in banc*), this court noted an issue which it did not feel called upon to decide:

whether in a case where an attorney for a stockholder does nothing more than find a claim for the recovery of "short-swing" profits under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), which the corporation then successfully brings at the stockholder's request, the stockholder or the attorney has a right to be compensated by the corporation for the attorney's services * * *.

As was to be expected, the issue has now arisen. The stockholder is Isadore Blau, the attorney is Morris J. Levy, and the corporation is Rayette-Faberge, Inc. Blau and Levy, as plaintiffs, appeal from an order of the United States District Court for the Southern District of New York, Harold R. Tyler, Jr., J., which granted defendant corporation's motion for summary judgment. For the reasons given below, we reverse and remand.

According to the papers before Judge Tyler: Appellant Blau, in a derivative capacity on behalf of the corporation, employed Levy in June 1966 to investigate transactions by insiders of Rayette in its securities; the purpose was to discover whether the corporation was entitled to recover any short-swing profits under section 16(b).[1] Blau agreed to pay Levy a reasonable attorney's fee, contingent upon any benefit which the corporation might derive from his efforts and upon reimbursement of Blau by the corporation for the amount of Levy's fee. After an "exhaustive study," Levy discovered that Walter P. Niemec, an officer and director of the corporation, had purchased and sold shares of Rayette within six-month periods and that Rayette might be entitled under section 16(b) to recover the profits gained from these transactions. On one such series of transactions, which terminated in May 1964, the two-year statute of limitations had already run; on another series, spanning the period from November 1964 to April 1965, about ¾ of the two-year limitation period had already gone by.

Levy, as attorney for Blau, advised the corporation in a letter dated July 28, 1966, of the existing cause of action under section 16(b), and the facts on which it was based. The letter requested the corporation to institute suit against Niemec to recover the short-swing profit, and stated that Blau would sue . after sixty days on the corporation's behalf if by that time it had neither been paid nor commenced an action to recover the profits. On August 4, 1966, the corporation responded, through its assistant secretary, that the matter was under investigation. Levy received no further word; on Thursday, September 22, he prepared a complaint and wrote Blau that since the sixty days would expire the following Monday, they would have to meet for Blau to verify the complaint. On the next day, Levy received a letter and a telephone call from Rayette's New York counsel informing him that Niemec had agreed to pay the corporation his profits from the transactions referred to in Levy's July 28 letter and that no legal

---

1. The statute provides:

(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months * * * shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. * * *

action would be necessary. Thereafter, Levy was informed that on September 26, 1966, Niemec paid the corporation $15,722.42 plus interest of $136.52.

Blau made demands on the corporation to pay Levy for his legal services, but these were refused. In November 1966, appellants brought this plenary action for recovery of legal fees. Both sides moved for summary judgment; Judge Tyler stated that he accepted Levy's averments but granted summary judgment for defendant on the ground that the rationale of our prior decision in Gilson v. Chock Full O'Nuts Corp., supra, required it. This appeal followed.

In *Gilson*, a stockholder of Chock Full O'Nuts had retained an attorney[2] on the same fee basis and for the same purpose as in this case. On April 10, 1962, the attorney informed that corporation that certain named directors had made "short-swing" profits and requested the corporation to bring suit by May 31, 1962, or the stockholder would bring suit before the running of the two-year statute of limitations on June 2, 1962. On April 16, 1962, the corporation replied that its preliminary investigation indicated no violation of section 16(b); it did not offer to communicate further with the attorney. Thereafter, the attorney drafted a complaint, but decided not to file it until May 31. Not until that date did the corporation file suit against the insiders and inform the attorney. After the section 16(b) action was settled for some $56,000, the stockholder and the attorney sued for a reasonable attorney's fee. The district court dismissed the complaint. On appeal, a panel of this court reversed, 326 F.2d 246 (2d Cir.1964) (Judges Swan, Clark and Marshall), apparently for the broad policy reasons that "reimbursement of attorney's fees was required by equitable considerations" and "in many cases * * * the possibility of recovering attorney's fees will provide the sole stimulus for the

enforcement of § 16(b) * * *." Upon rehearing *in banc*,[3] the judgment of the panel was followed, but on a "somewhat narrower" basis, 331 F.2d at 109. The full bench noted analogous state court decisions and then stated:

There are policy considerations against requiring a corporation to pay a stockholder for volunteering to do what the corporation ought to do and might well have done without any impulse from him, considerations that would be especially strong in a case where the stockholder's request was made shortly after the information became available from reports under § 16(a) and at a time when the corporation still had many months in which to sue. We find it unnecessary in this case to weigh such considerations against the contrary ones that have been urged in support of Dottenheim [v. Emerson Elec. Mfg. Co., 7 F.R.D. 195 (E.D.N.Y.1947)]. See 2 Loss, Securities Regulation 1054 (2d ed.1961). For the record shows that the services appropriately rendered by Gilson's attorney were considerably more than simple preparation of the statutory request to the corporation to sue.

The court then emphasized the corporation's "negative attitude" toward the attorney's letter "and the prospective running" of the statute of limitations in the very near future; this justified preparation of a complaint by the attorney. Therefore, "It would run counter to effective enforcement of the statute wholly to deny compensation in such a case." Id. at 110.

We can understand why the district judge in this case construed the *in banc* opinion to mean that drafting a complaint may in special circumstances be compensable, but services short of that could never be compensable because they were not "appropriately rendered." However, that question was explicitly left

2. The same Mr. Levy, one of the appellants here.

3. Judge Clark, who sat on the original panel, died before the panel decision was

rendered and thus did not sit on the rehearing.

open in *Gilson,* and further consideration of the underlying issues leads us to a contrary result. In this case, the stockholder would not be paid "for volunteering to do what the corporation ought to do and might well have done without any impulse from him." Taking Levy's averments as true—as the district judge did —it is quite clear that the corporation would most probably have done nothing at all about Niemec's trading activities had Levy not investigated on Blau's behalf. Given this set of facts, we find it necessary to examine the competing policy considerations which the *Gilson in banc* court alluded to, but did not weigh.

In the leading case of Smolowe v. Delendo Corp., 136 F.2d 231, 148 A.L.R. 300 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943), this court not only allowed an attorney's fee in a 16(b) action, but also cautioned that such allowances should "not be too niggardly," because "in many cases such as this the possibility of recovering attorney's fees will provide the sole stimulus for the enforcement of § 16(b) * * *." See Cook and Feldman, Insider Trading Under the Securities Exchange Act, 66 Harv.L.Rev. 385, 421 (1953). In *Smolowe,* the stockholder had to sue to recover the "short-swing" profits for the corporation. But the same insistent policy applies even if suit is not brought, as in Dottenheim v. Emerson Elec. Mfg. Co., 7 F.R.D. 195 (E.D.N. Y.1947). In that case, as in this one, investigation by a stockholder's attorney led to a letter to a corporation; no litigation was necessary, and the corporation recovered substantial short-swing profits from its president.[4] When the stockholder sued for reimbursement of legal expenses, the corporation moved to dismiss. The district court denied the motion; after referring to the *Smolowe* holding that reimbursement of a stockholder is proper when he has had to bring suit, the court stated (id. at 197):

> The distinction is urged, by the defendant, that the complaint here does not allege that an action was commenced. It would appear that the purpose of the statute would be as effectively thwarted if such distinction were to be approved as if reimbursement were to be denied entirely. If the objective is the recovery by the corporation of unlawful profits, would it be reasonable to say that a stockholder shall be entitled to all his expenses if he needs to bring suit, but that he shall be denied reimbursement where the same benefit to the corporation has resulted without the necessity of legal proceedings and at less expense? This would be penalizing efficiency and expediency. A stockholder acting in good faith would be induced to accompany his request to the corporation with only scanty information in the hope that the corporation might thereby neglect to bring suit, so as to enable the stockholder to institute an action and thereby recover the fees paid to his attorney for the investigation required to uncover the illegal dealings of the officer. Such an unreasonable interpretation of legislative intent is not to be countenanced.

The case has been cited with approval, although in a distinguishable situation, by the First Circuit in Angoff v. Goldfine, 270 F.2d 185, 190 (1st Cir.1959). See also Henss v. Schneider, 132 F.Supp. 60 (S.D.N.Y.1955); 60 Harv.L.Rev. 835 (1947); 24 Ind.L.J. 255 (1949). Moreover, according to Professor Loss, the view expressed in *Dottenheim* "has been consistently followed in a number of unreported instances. It is certainly sound, given the present statutory scheme." 2 Loss, Securities Regulation 1054 (2d ed. 1961).[5] This is also the position which

---

4. The sum exceeded $57,000.

5. In *Dottenheim,* a counsel fee of $1,000 was ultimately allowed. According to the court, the corporation already knew of the possible cause of action when the letter from Dottenheim's attorney was received and apparently contemplated acting upon it before the expiration of the two year period unless in the meantime "some decision might be handed down modifying the broad language of Smolowe

the Securities and Exchange Commission pressed upon this court in *Gilson*. We also note that if *Gilson* is read as allowing compensation only when a stockholder acts at the last possible minute, he will be encouraged to do just that, similarly penalizing "efficiency and expediency." Cf. Note, Securities Regulation: Section 16(b) and Attorney's Fees for Parties Not of Record, 64 Colum.L.Rev. 1343, 1346 (1964).

There are other considerations which suggest denial of attorney's fees in this situation. Professor Loss has emphasized the problem of champerty; to deal with it, he calls for amendment of the statute to substitute Commission enforcement for the private suit. 2 Loss, supra at 1052–54.[6] However, Congress has not acted on this suggestion. In Magida v. Continental Can Co., 231 F.2d 843, 848 (2d Cir.), cert. denied, 351 U. S. 972, 76 S.Ct. 1031, 100 L.Ed. 1490 (1956), we held that the possibility of champerty in violation of New York law would not justify setting aside recovery of over $47,000 in a section 16(b) suit, although a showing of misconduct would be relevant on a fee application.[7] We pointed out that "the public policy of New York cannot nullify this federally created right, established for the effectuation of a broad federal policy." We realize that if investigatory work alone is compensable, there may be a greater incentive for abuse of professional conduct, but there will also be greater incentive to enforce the statute. Moreover, it is possible to achieve the latter without undue encouragement of the

former. We do not suggest that counsel fees should be automatically awarded to overzealous attorneys; nor do we want lawyers poring over 16(a) reports as soon as they are made public to find a cause of action before the corporation does and thereby collect a fee. But there is a middle ground between that unattractive picture and denial of all compensation unless suit is brought: Reimbursement for information leading to corporate recovery will be allowed only if the corporation has done nothing for a substantial period of time after the suspect transactions and its inaction is likely to continue. In this way, not speed but careful investigation will be rewarded, and the corporation will have adequate opportunity to enforce its rights without prodding from a stockholder. But if the corporation has been, and is likely to be, inattentive to its rights, a portion of any recovery should properly go to the stockholder for reimbursement of any reasonable legal expenses. Concededly, this standard is not precise, but rules of thumb in this field as elsewhere can be worked out on a case by case basis. Cf. Petition of Marina Mercante Nicaraguense, S. A., 364 F.2d 118 (2d Cir.1966), cert. denied, Marina Mercante Nicaraguense, S. A. v. McAllister Bros., Inc., 385 U.S. 1005, 87 S.Ct. 710, 17 L.Ed.2d 544 (1967); McWeeney v. New York, N. H. & H. R. R. Co., 282 F. 2d 34 (2d Cir.), cert. denied, 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960).

Another argument for denying attorney's fees in these situations is that such awards saddle a corporation with

---

v. Delendo [Corp.] supra." Accordingly: The short of the matter is then what may be characterized as the effect of the Frederick letter was that the corporation without suit received the sum of money on February 15, 1946, though there is nothing in the record to show that the money would not have been paid at some time prior to December 18, 1946. Hence at most the contribution of the plaintiff was to enable the corporation without suit to have the use of $57,872 from February 15, 1946, until December 18, 1946, a matter of ten months.

Dottenheim v. Emerson Elec. Mfg. Co., 77 F.Supp. 306, 307 (E.D.N.Y.1948).

6. But see Cary, Book Review, 75 Harv.L. Rev. 857, 861 (1962):
   The payment of legal fees to counsel out of any corporate recovery has been found to be one of the few effective prophylactics in the prevention of corporate abuse.

7. On the later fee application, the district court granted an allowance of $12,000. 176 F.Supp. 781 (S.D.N.Y.1956).

**474**

unnecessary expense. However, if a fee is allowed to a stockholder's attorney for services short of bringing suit only when it is likely that the corporation would have done nothing, this objection disappears. In that situation, the expense would be necessary since without the incentive created by the possibility of collecting a fee, the corporation would have received nothing. It has been pointed out that in a larger sense any 16(b) award to the corporation is essentially a windfall, since the corporation has suffered no harm for which it is being recompensed. See 2 Loss, supra at 1054. When it is reasonably clear that the corporation was about to sleep on its rights, the windfall seems even greater. Moreover, we do not regard the corporation on those facts as necessarily paying two legal fees for the same work. Most of the investigative services performed by a stockholder's attorney will not be repeated by the corporation's lawyer; the latter will start with the information given him and proceed from there, frequently, as in this case, with the direct cooperation of the officer or director involved. It is true that it is more difficult for an outsider or his attorney to uncover information justifying a section 16(b) claim; to that extent, the corporation may be paying for work its own attorney could have done more easily and, therefore, more cheaply. But since the corporation, on this hypothesis, was not prepared to have the work done at all, we cannot regard the fee for legal services as an excessive expense.

■■ It must be recalled that the purpose of section 16(b) is to prevent "the unfair use of information" by insiders and to correct the "widely condemned evil" of speculation by insiders in the securities of their corporation. Smolowe v. Delendo Corp., 136 F.2d at 235. See also Adler v. Klawans, 267 F.2d 840 (2d Cir.1959). And we have recently been reminded that the Securities Exchange Act of 1934 was remedial legislation which "should be construed broadly to effectuate its purpose." See Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (Dec. 18, 1967).

■ Taking into account all of the relevant considerations, we conclude that there are circumstances in which an attorney's fee may be awarded for work done in discovering a valid section 16(b) claim for a corporation. Moreover, if plaintiffs' allegations are true, this is such a case. At the time of Levy's letter to the corporation, the statute of limitations had already run on the first series of Niemec's transactions, forfeiting a right to recover a sum allegedly exceeding $15,000. Moreover, eighteen months had already gone by since the corporation could first have sued on the second series of Niemec's transactions. Even Rayette's counsel was forced to admit, in his affidavit accompanying his motion for summary judgment, that the investigation of the facts with respect to Niemec's transactions did not begin until Rayette received Levy's letter and demand. Therefore, summary judgment for the corporation was improper and must be reversed. Indeed, there appears to be no genuine issue as to whether Levy's letter was the "motivating" cause for the recovery, despite the corporation's formal denial that it was. On remand the district court should treat that issue as resolved in plaintiffs' favor and confine itself to the amount of any fee to be awarded.

■ It is not clear from appellants' brief in this court whether a fee is still sought for Levy's drafting of the complaint. If it is, we agree with the holding of the district court that none was justified. There was no indication by the corporation that it did not intend to enforce the claim against Niemec; in fact, Levy was notified before the sixty-day period expired that Niemec intended to pay the corporation. It is true that in *Gilson,* the court did allow a fee for drafting a complaint which turned out to be unnecessary. But there was no urgency here, as there was in *Gilson,* since the statute of limitations had some months to run. Until he prepared the complaint, Levy acted in a manner perfectly consistent with the statutory scheme as we see it. He gave the corporation ample time to initiate recovery itself; when it

did not, he brought the cause of action to its attention; he gave the corporation a full sixty days to investigate, and to file suit or settle the claim with no statute of limitations problem; and he allowed himself enough time to draft the complaint after the sixty-day period, if the corporation failed to act. He should have continued this course to its conclusion by waiting for the corporation's time to run out before preparing a complaint. Cf. Henss v. Schneider, 132 F.Supp. 60 (S.D.N.Y.1955).

Summary judgment for defendant reversed; the case is remanded for proceedings consistent with this opinion.