**Leo P. PORTNOY, Plaintiff,**

v.

**STANDARD–PACIFIC CORPORATION, a Delaware corporation, and William H. Langenberg, Defendants.**

**No. 86 C 0653.**

United States District Court, N.D. Illinois, E.D.

June 29, 1987.

Jerrold M. Shapiro, Chicago, Ill., for plaintiff.

Jeffrey C. Briggs, Gibson Dunn & Crutcher, Los Angeles, Cal., Robert T. Isham, Jr., James Burns, Isham, Lincoln & Beale, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Presently before the Court is the motion of plaintiff Leo P. Portnoy to recover attorneys' fees from defendant Standard-Pacific Corporation ("SPC") in conjunction with his

shareholders' derivative suit under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) (1982).[1] For the following reasons, the Court allows Portnoy's motion but reduces the amount requested to $570.50.[2]

## FACTUAL BACKGROUND [3]

Portnoy filed this action on behalf of SPC in his derivative capacity as an SPC shareholder. Portnoy's complaint concerns short-swing profits earned by an SPC insider. The insider, defendant William H. Langenberg, was a director of SPC who apparently earned profits on stock sold sometime in the beginning of March 1985 within six months of its acquisition, conduct proscribed by § 16(b).

On November 20, 1985, Jerrold M. Shapiro, Portnoy's counsel, sent a letter to the SPC Board of Directors notifying its members of Langenberg's potential § 16(b) violation and indicating that he would file a derivative suit in Portnoy's behalf if no action was taken by SPC within sixty days of the day the Board received the letter. SPC received Shapiro's first letter on November 26, 1985, and the sixty-day period ran on January 25, 1986. Three days later, on January 28, 1986, Portnoy's complaint was filed with this Court. On that day, Shapiro sent another letter to SPC stating that the complaint had been filed, but that Shapiro would refrain from formally commencing service for an additional fourteen days in order to permit SPC to take action to resolve the matter informally. That letter was received by SPC on February 3, 1986. On February 19, 1986, Shapiro received a letter from SPC informing him that the company had recouped Langenberg's short-swing profits of $32,625 as of "February 4," although the letter itself was dated *January* 14, 1986. SPC included with that letter a check for $2,000 made out to Shapiro for services rendered in notifying the company of Langenberg's violation. Interestingly, the check is dated February 3, 1986, twenty days after the date of the letter. In a declaration submitted by one of SPC's attorneys, this letter is referred to as having been sent on *February* 14, 1986. We assume that this later date is uncontested and that the letter was inadvertently misdated. SPC also sent a confirming letter on April 10, 1986, including a declaration from SPC's treasurer indicating that the company had recovered the short-swing profits which were the subject of Portnoy's complaint.

Attached to SPC's response to Portnoy's attorneys' fees motion is a copy of a letter dated January 8, 1986, addressed to Shapiro from Robert K. Montgomery, one of SPC's lawyers, stating that SPC's attorneys were looking into the matter and would be in a "position to respond" within thirty days. In his supporting affidavit, Shapiro swears that he never received that letter. Furthermore, SPC did not include documentation, such as a return receipt, which would prove that Shapiro indeed received the letter. Another SPC attorney, but not Montgomery, submitted a declara-

---

**1.** That provision states in pertinent part:

For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized.

**2.** This figure reflects the amount awarded as set forth in our opinion reduced by the $2,000 already paid to Portnoy's attorney by SPC.

**3.** The facts are drawn from the complaint and the affidavits and exhibits submitted by the parties in conjunction with this motion.

tion suggesting that the letter was sent on January 8.

The suit was settled since all short-swing profits had been formally recovered from Langenberg by SPC, and on May 23, 1986, this Court dismissed the case with prejudice while retaining jurisdiction over the only remaining matter, Portnoy's petition for attorneys' fees. Portnoy seeks fees for a total of 33 hours of Shapiro's time, $208 in disbursements and a $517 "bonus."

## ENTITLEMENT TO ATTORNEYS' FEES

■ Although no specific statutory provision authorizes a grant of attorneys' fees to a plaintiff in Portnoy's position, courts have allowed such an award in cases where a shareholder is important in pursuing a § 16(b) violation which ultimately results in a recovery of short-swing profits by the corporation. *Blau v. Rayette-Faberge, Inc.*, 389 F.2d 469 (2d Cir.1968); *Gilson v. Chock Full O'Nuts Corp.*, 331 F.2d 107 (2d Cir.1964); *Smolowe v. Delendo Corp.*, 136 F.2d 231 (2d Cir.), *cert. denied*, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943). This type of award is made from the fund or "windfall" recouped by the corporation from the insider's short-swing profits. *See Coran v. Snap-On Tools Corp.*, 408 F.Supp. 1060, 1063 (E.D.Wis.1976). The policy underlying these fee awards is that some benefit has been conferred on the corporation for a statutory violation which might have gone unremedied had it not been for the diligence and assistance of the complaining shareholder. Accordingly, the attorneys' fees accrued by that shareholder which are fairly attributable to conferring that benefit should be borne by the corporation which would have incurred some expenses of its own had it pursued legal relief for the unlawful trading. *Smolowe*, 136 F.2d at 241. Moreover, as one court observed, the potential recovery of attorneys' fees may often be the sole stimulus for enforcement of § 16(b) in a shareholders' derivative suit. *Id.* at 241.

Furthermore, the cases which have permitted recovery of attorneys' fees by shareholders have not limited awards to situations where the shareholder actually had to follow through with the litigation and achieve a formal court-ordered recovery. Indeed, at least one court allowed the shareholder to recover fees where the short-swing profits were recovered in a settlement before any suit was ever filed. *Blau*, 389 F.2d at 474. Given the policy underlying the award of attorneys' fees in these circumstances, denial of recovery in cases which settle amicably before suit is filed would create a rather perverse system of incentives for plaintiffs' attorneys. Rather than seeking the quickest and most efficient resolution of differences, the attorneys would be encouraged under such a system to file their lawsuits, whether necessary or not, in order to be able to recover a fee award. *Id.* at 472 (citing *Dottenheim v. Emerson Electric Manufacturing Co.*, 7 F.R.D. 195 (E.D.N.Y.1947)).

■ Under these standards, it appears that Portnoy's investigation and complaint regarding Langenberg's short-swing profits was primarily responsible for SPC's recovery of the same. Although SPC eventually undertook action which resulted in that recovery, there is no indication that it would have done so had Portnoy not raised the issue. Indeed, in its brief in opposition to the attorneys' fees motion, SPC characterizes Langenberg's § 16(b) violation as an "innocent oversight," from which it is not unreasonable to infer that SPC might well not have pursued or even noticed such a violation without Portnoy's aid. Furthermore, Portnoy's investigation may have prompted SPC to recoup the funds more quickly than it would have otherwise, a legitimate ground for an attorneys' fee recovery. *See, e.g., Dottenheim v. Emerson Electric Manufacturing Co.*, 77 F.Supp. 306, 308 (E.D.N.Y.1948). From the documentation in the record at this time, it appears that Portnoy's counsel was not informed until February 19, 1986, that SPC had done anything to follow up on his November 1985 letter. We do not find sufficient proof in the record that the January 8, 1986 letter was ever received by Shapiro. Shapiro had given SPC an opportunity to respond to his inquiries and filed

suit only when no response was forthcoming and the sixty-day period required by § 16(b) had passed. Furthermore, he gave SPC a second chance to respond at the time he filed the complaint, but SPC's response was not timely despite the fact that it had notice that Portnoy would be incurring expenses in pursuit of the violation until he knew the matter was being taken care of by SPC. The Court finds, therefore, that Portnoy's complaint was an important motivating factor in SPC's eventual pursuit of a short-swing profits recovery.

 Nonetheless, a court should not award fees to a plaintiff shareholder for work which was unnecessary to achieve a recovery of short-swing profits. In the present case, Shapiro received acknowledgment from SPC on February 19, 1986, that it had recovered the profits from Langenberg as of February 4. Any legal services performed by Shapiro after February 19 were necessarily duplicative, provided no further benefit to SPC and were done at Shapiro's risk. Courts have reduced fees in cases where the corporation followed through on the shareholder's complaint but the shareholder's attorney continued to monitor the suit. *See Gilson v. Chock Full O'Nuts Corp.*, 331 F.2d 107, 110 (2d Cir.1964) (statute does not contemplate an allowance for "watch-dog" services after a corporation has begun an action). Rather, the fees recoverable should be tied to the benefit conferred. Accordingly, we will deny recovery for any legal work done by Shapiro after he received notice on February 19, 1986, that SPC had successfully recouped the short-swing profits from Langenberg.

Based on the copies of Shapiro's time sheets submitted in conjunction with this motion, we conclude that Shapiro should be compensated for 13.5 hours of time spent on this litigation until February 19, 1986, in addition to related disbursements of $208.00. We find nothing unreasonable about Shapiro's proposed compensation rate of $175.00 per hour, although we do not think the extent or complexity of his legal work in this suit merits the bonus he requests. Thus, the total award which

should be recoverable from SPC is $2,570.50 (13.5 times $175 plus $208). However, we must reduce that award because, as stated above, SPC already issued a check for $2,000 to Shapiro when it informed him that the short-swing profits had been recovered from Langenberg. Accordingly, we hereby grant Portnoy's motion for attorneys' fees in the amount of $570.50.

## CONCLUSION

For the reasons set forth in this opinion, we allow Portnoy's motion for attorneys' fees at the reduced amount of $570.50. It is so ordered.