**Leo P. PORTNOY, Plaintiff,**

v.

**GOLD RESERVE CORPORATION, a Montana corporation, and Dr. Ronald P. Grunwald, M.D., Defendants.**

**No. C–88–232–RJM.**

United States District Court, E.D. Washington.

March 15, 1989.

Jerrold M. Shapiro, Chicago, Ill., for plaintiff.

Leslie R. Weatherhead of Witherspoon, Kelley, Davenport & Toole, Spokane, Wash., for defendants.

## MEMORANDUM AND ORDER

ROBERT J. McNICHOLS, Chief Judge.

On January 26, 1989, the Court heard argument on plaintiff's application for attorney's fees and expenses. Plaintiff had previously brought a shareholder's derivative suit in this Court in order to recover illegal short-swing profits. Thereafter, plaintiff moved the Court for an award of his legal fees and expenses incurred in prosecuting the derivative action and in allegedly motivating the recovery of the illegal profit. For reasons that follow, the Court denies plaintiff's request because his efforts were not an important motivating factor in the recovery of the short-swing profits, and because policy considerations do not favor an award.

## FACTS AND PRIOR PROCEEDINGS

Gold Reserve Corporation ("GRC") is a Montana corporation with 3,907,972 outstanding shares, which are registered on the Spokane Stock Exchange and are traded in the NASDAQ market. Dr. Grunwald is a director of GRC. On November 13,

1987, Dr. Grunwald exercised stock options in GRC stock and purchased 25,000 shares at $1.00 per share. Dr. Grunwald sold 20,500 shares at $5.62 per share on July 31, 1987, and then sold 5,000 shares at $5.00 per share on January 31, 1988. Defendants admit both transactions violated section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) (1982).[1]

In early February 1988, GRC prepared and filed Dr. Grunwald's Form 4, through which form the SEC requires directors and officers of publicly held corporations to disclose their transactions in the stock of that corporation. GRC claims that at that time it became aware of Dr. Grunwald's violation of § 16(b) and advised Dr. Grunwald to see his attorney to rectify the problem.

Immediately after the SEC Form 4's became public, by letter dated February 19, 1988 attorney David Lopez sent on behalf of his client CRA Realty Corp. a letter demanding that GRC redress Dr. Grunwald's violation. By letter dated February 22, 1988, attorney Morris Levy sent on behalf of his client Jammys International, Inc. a similar letter. Finally, by letter dated February 26, 1988, attorney Jerrold Shapiro sent a similar letter on behalf of his client Leo Portnoy, who owned one share of the 3,907,972 outstanding shares in GRC stock.[2]

On February 29, 1988, the same day that GRC received Shapiro's letter, Dr. Grunwald's personal attorney sent Dr. Grunwald a letter, with a copy to GRC, stating that Grunwald had agreed to disgorge the short-swing profit, but that the precise amount of restitution could not be determined until May 1988. Consistent with this letter, on March 16, 1988 counsel for GRC sent Messrs. Lopez, Levy, and Shapiro letters informing them that GRC was investigating the violation and would recover any unlawful profits if a violation were found. Then on April 26, 1988, counsel for GRC again wrote to the three attorneys and advised them that the exact amount to be recovered could not be determined under Rule 16(b)–6 for several more weeks.[3]

Although assured that GRC would recover the illegal profits, nonetheless immediately after expiration of the 60–day waiting period Portnoy brought a shareholder's derivative suit on May 2, 1988 pursuant to 15 U.S.C. § 78p(b) in order to recover the illegal short-swing profit from Dr. Grunwald. GRC was not formally served with

---

**1.** Section 16(b) provides that for the purpose of preventing the unfair use of information which a beneficial owner of more than 10 percent of any class of equity security registered on a national securities exchange, or an officer or director of the corporation issuing such security, may have obtained because of his relationship to the corporation, any profit realized by him from any purchase and sale, or sale and purchase, of any equity security of the corporation within less than 6 months, inures to, and is recoverable by the corporation, or by a stockholder if the corporation fails or refuses to bring a suit within 60 days after request or fails to prosecute such suit diligently. 15 U.S.C. § 78p(b).

**2.** Evidently the following scenario occurs after SEC Form 4's become public. A lawyer, or someone in his hire, peruses the forms to catch a violation of § 16(b). When one is found, the lawyer quickly has a business associate purchase shares of the corporation in which the violation occurred. Thereafter, the lawyer sends a letter demanding redress of the violation. In most circumstances, the corporation recovers the short-swing profit without bringing suit. The lawyer who notified the corporation of the violation then seeks and usually recovers attorney's fees and costs incurred. Thus, the corporation obtains a windfall, and the lawyer profits for his "public" services. *See Magida v. Continental Can Co.,* 176 F.Supp. 781, 783 (S.D. N.Y.1956) ("The fact that the statute leaves its enforcement to an individual, rather than to an administrative agency or a public official, and that it imposes no restriction on the capacity of the individual other than that he be a stockholder at the time of suit, is in effect an open invitation to any one who has knowledge of a short-swing profits transaction to go out and purchase a minimal share for the sole purpose of suing.").

**3.** Rule 16(b)–6 provides in pertinent part as follows:

"In respect of transactions specified in paragraph (a) of this section the profits inuring to the issuer shall not exceed the difference between the proceeds of sale and the lowest market price of any security of the same class within six months before or after the date of sale."

By January 1988, the Rule 16(b)–6 reference price was known for the 20,500 shares sold in July 1987. For the 5,000 shares sold in January 1988, the reference price could not be determined until July 1988.

process until June 28, 1988; however, GRC admits that its counsel was aware of the suit soon after it was filed. Shortly thereafter, on May 13, 1988 GRC recouped $62,400.00 in short-swing profits from Dr. Grunwald. On May 16, 1988, GRC's counsel wrote to Messrs. Levy, Lopez, and Shapiro to inform them that Dr. Grunwald had disgorged the illegal profits; several days later, Shapiro was sent proof of the recovery. Then, after Shapiro had questioned whether the amount of the recovery was correct, in early June 1988 GRC sent Shapiro a letter stating the it believed a full recovery had been obtained.

On September 2, 1988, after noting that "the 'insider' has now satisfied his unequivocal obligation under the statute," Shapiro requested that this Court award to him from GRC his legal fees and expenses in the sum of $8,032.58 ($7,538.75 in legal fees and $493.83 in disbursements) incurred in prosecuting this action.[4]

GRC opposes Shapiro's request on the following grounds: (1) since GRC was already seeking to recover the illegal profit when Portnoy made his first complaint, Shapiro is not entitled to his request as his efforts were not a motivating factor in GRC's recovery; (2) the hours Shapiro alleges were spent on the case are excessive and unnecessary in part because GRC had notified Shapiro early on that it would recover the illegal profits; and (3) considering the simplicity of the work allegedly performed, Shapiro's rate of compensation is unreasonable.

The Court now turns to determine whether it would be equitable to allow Shapiro recovery of his fees and expenses in bringing Portnoy's complaint.[5]

**4.** Shapiro's $7,538.75 in legal fees are based on a proposed reasonable billing rate of $185.00 per hour times 40.75 hours, the time stated as spent on the case.

**5.** The Court need not address the claims of Messrs. Lopez or Levy. On June 21, 1988, Lopez and his client CRA Realty brought suit against GRC in the U.S. district court for the Southern District of New York to recover fees and costs incurred. On September 14, 1988, the

## DISCUSSION

■ Although the Securities Exchange Act of 1934 does not require a grant of attorney's fees, a court in its equitable discretion may award reasonable attorney's fees and expenses to a shareholder who brings a derivative action or otherwise provides efforts that ultimately result in a recoupment of short-swing profits by the corporation since such an award spurs the enforcement of § 16(b). *Blau v. Rayette–Faberge, Inc.*, 389 F.2d 469 (2nd Cir.1968); *Smolowe v. Delendo Corp.*, 136 F.2d 231, 241 (2d Cir.), *cert. denied*, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943); *Portnoy v. Standard–Pacific Corp.*, 666 F.Supp. 140, 142 (N.D.Ill.1987). The policy for such a fee award is that the corporation has received some benefit for a statutory violation that may have remained unremedied but for the diligence and assistance of the complaining shareholder. *Standard–Pacific Corp.*, 666 F.Supp. at 142; *see also Coran v. Snap–On Tools Corp.*, 408 F.Supp. 1060, 1063 (E.D.Wis.1976).

■ However, a court should not award fees to a plaintiff shareholder for work which was unnecessary to achieve recovery of short-swing profits. *Standard–Pacific Corp.*, 666 F.Supp. at 143 ("fees recoverable should be tied to the benefit conferred"; shareholder's efforts must be "an important motivating factor in [the corporation's] eventual pursuit of a short-swing profits recovery"); *Blau v. Rayette–Faberge, Inc.*, 389 F.2d at 474 (plaintiff's efforts must be " 'motivating' cause for the recovery"). A plaintiff shareholder's work to achieve a recovery that is duplicative of the corporation's or that provides no further benefit to the corporation is done at the plaintiff's risk. *Id.; see also Gilson v. Chock Full*

New York district court dismissed the suit for improper venue. By letter dated December 30, 1988, Mr. Lopez indicated that he and his client waived any further claim to reimbursement. On October 18, 1988, Levy and his client Jammys International also brought suit against GRC in the U.S. district court for the Southern District of New York to recover fees and costs. Levy has dismissed his claim after reaching a settlement with GRC.

**568**

*O'Nuts Corp.*, 331 F.2d 107, 110 (2nd Cir. 1964) (en banc).

In *Gilson*, the Second Circuit allowed an award to an attorney who had merely brought the violation to the attention of the corporation which then brought suit, when the corporation had earlier replied that it had found no violation and when the running of the statute of limitations was very near. However, the court noted the following policy considerations:

> "There are policy considerations against requiring a corporation to pay a stockholder for volunteering to do what the corporation ought to do and might well have done without any impulse from him, considerations that would be especially strong in a case where the stockholder's request was made shortly after the information became available from reports under § 16(a) and at a time when the corporation still had many months in which to sue."

*Gilson*, 331 F.2d at 109.

The Second Circuit provided further policy guidance in *Blau v. Rayette–Faberge*, by stating as follows:

> "We do not suggest that counsel fees should be automatically awarded to overzealous attorneys; nor do we want lawyers poring over 16(a) reports as soon as they are made public to find a cause of action before the corporation does and thereby collect a fee ... Reimbursement for information leading to corporate recovery will be allowed only if the corporation has done nothing for a substantial period of time after the suspect transactions and its inaction is likely to continue.

> In this way, not speed but careful investigation will be rewarded, and the corporation will have adequate opportunity to enforce its rights without prodding from a stockholder. But if the corporation has been, and is likely to be, inattentive to its rights, a portion of any recovery should properly go to the stockholder for reimbursement of any reasonable legal expenses."

*Blau v. Rayette–Faberge*, 389 F.2d at 473.

■ In the present case, the Court concludes that Shapiro's efforts were not a substantial or motivating factor in GRC's eventual pursuit and recovery of the short-swing profits from Dr. Grunwald. Shapiro's letter was the third and the last to notify GRC of the illegal transaction. By the time Shapiro's letter was received, GRC was already in the process of investigating the transaction and recouping the profits if a violation were found. The other parties seeking reimbursement of fees and costs, both of whom notified GRC of the illegal transaction before Shapiro did, have either waived their claim or settled with GRC.[6]

Moreover, early on in this controversy, GRC informed Shapiro of its intent to recover any illegal profits, and indicated that it was merely waiting for the Rule 16(b)–6 reference price to become known. Although GRC may have been mistaken in determining when the 6–month period for the reference price elapsed, nevertheless at all times GRC indicated that it was pursuing any violation. Under the present facts, the Court does not believe that equity would be served if Shapiro were granted an

---

**6.** Plaintiff makes much of the fact that only his complaint both sought the recovery of illegal short-swing profits (rather than just for the recovery of legal fees), and antedated the actual recovery of the short-swing profits. However, there is no condition to recover fees that a plaintiff first file a complaint for the recovery of the illegal profits. By merely informing a corporation of an illegal transaction and requesting the corporation to sue, a stockholder or his attorney is entitled to attorney's fees and expenses, if the information caused the corporation to recoup the illegal profits. *Dottenheim v. Emerson Electric Mfg. Co.*, 77 F.Supp. 306 (E.D. N.Y.1948); *Blau v. Rayette–Faberge*, 389 F.2d 469 (2nd Cir.1968). Thereafter, the shareholder

or his attorney can bring an action against the corporation to recover only attorney's fees and expenses. *Snap–On Tools*, 408 F.Supp. at 1062. Moreover, the mere fact that plaintiff's complaint antedated the actual recoupment is irrelevant if the complaint was not the motivating cause of the corporation's recoupment. *See Standard–Pacific Corp.*, 666 F.Supp. at 143.

The Court has concluded that plaintiff's complaint was not the motivating factor in GRC's pursuit and recoupment of the illegal profits. Others informed GRC of the violation before plaintiff did, and GRC was already seeking recoupment when plaintiff first appeared. Accordingly, plaintiff and Shapiro are not entitled to an award.

award for services that provided no benefit to GRC.[7]

Furthermore, the Court concludes that policy considerations do not favor an award to Shapiro. Before the Court is a request for attorney's fees and costs from an attorney whose client owns one share of the almost 4,000,000 outstanding shares in GRC stock, and whose demand letter to GRC was made almost immediately after the information contained in Form 4 became publicly available and at a time when GRC still had many months to act before the limitations period would run. In all likelihood, the public reports were pored over to find a cause of action before GRC did.[8] Clearly, this case comes within the policy considerations mentioned in *Gilson* and *Blau v. Rayette–Faberge*. Accordingly, the Court also holds that Shapiro is not entitled to an award because of policy considerations.[9]

CONCLUSION

The Court realizes that other courts have granted attorney's fees and costs incurred in having a corporation recoup an illegal short-swing profit "[s]ince in many cases ... the possibility of recovering attorneys

fees will provide the sole stimulus for the enforcement of § 16(b)...." *Smolowe*, 136 F.2d at 241. However, an award is equitable only if the attorney's services were a substantial or motivating factor in the corporation's recovery of the illegal profit. Since the facts here indicate that Shapiro's services were not an important motivating factor in GRC's recoupment, the Court concludes that Shapiro is not entitled to an award for his fees and costs. Moreover, the Court also finds that Shapiro is not entitled to an award because of policy considerations. Therefore, Shapiro's request for an award for attorney's fees and costs is DENIED.[10] The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

---

7. Shapiro claims in his Reply Brief that "since Portnoy's Complaint was timely and properly filed after the expiration of the 60–day period, the 'bright-line rule' ... *mandates* the award of compensation to plaintiff's counsel...." *CR 19* at 5 (emphasis added). The Court disagrees. This is an equitable proceeding, and the Court will *consider* awarding compensation only if it finds that Shapiro's services were a substantial or *motivating factor* in GRC's eventual pursuit and recovery of short-swing profits from Dr. Grunwald. Since Shapiro did not confer a benefit on GRC, it would be inequitable to grant him an award.

8. The Court notes *Shapiro v. TSO Financial Corp.*, No. 86 C 7609 (N.D.Ill. October 15, 1986) (available on WESTLAW, 1986 WL 11617), in which the court commented on the relationship between Shapiro and Portnoy as follows:

"Both Shapiro and Portnoy have established a cottage industry in the short-swing profit field: Both this Court and its colleagues are regularly delivered complaints either by Portnoy to compel listed companies to pursue their 1934 Act § 16(b) remedies, or by Shapiro acting to recover lawyer's fees for his services to Portnoy (as in this case). This observation is not made in pejorative terms...."

9. The plaintiff here is *not* being denied an award because of an alleged champertous agree-

ment. In the absence of direct proof of a champertous agreement, a corporation may not raise the issue of champertous conduct as a defense to an application for attorney's fees. *Magida v. Continental Can Co.*, 176 F.Supp. 781, 783 (S.D. N.Y.1956) ("Presumably Congress is aware of the opportunity presented to attorneys to finance suits for their benefit, but apparently it regards public policy against proved and repeated violations of fiduciary responsibility by corporate officers at the expense of the public more detrimental to public good than the violation of generally accepted ethics by attorneys"). Proof of a champertous agreement is pertinent only to the determination of the amount of the award. *Magida v. Continental Can Co.*, 231 F.2d 843, 848 (2nd Cir.), *cert. denied*, 351 U.S. 972, 76 S.Ct. 1031, 100 L.Ed. 1490 (1956).

In denying plaintiff his request for an award, the Court has concluded only that policy considerations also indicate that an award would be inequitable here.

10. Having decided that Shapiro is not entitled to an award for attorney's fees and costs, the Court need not address GRC's other contentions that Shapiro's hours spent on this case were excessive, and that Shapiro's hourly rate was unreasonable.