## JEFFERSON LAKE SULPHUR CO. v. WALET.

### Civ. A. No. 3104.

United States District Court
E. D. Louisiana, New Orleans Division.
April 2, 1952.

Deutsch, Kerrigan & Stiles, Eberhard P. Deutsch and Rene H. Himel, Jr., all of New Orleans, La., for plaintiff.

James G. Schillin, New Orleans, La., Myer Feldman, Washington, D. C., Atty. for Securities & Exchange Commission amicus curiae for defendant.

WRIGHT, District Judge.

█ Section 16(b) of the Securities & Exchange Act of 1934 [1] provides that all profits realized by an officer or director of a corporation from short-term trading in its securities shall inure to the corporation. The purpose of the statute is to prevent in short-term trading in its securities the unfair use of information which may have been obtained by an officer or director of the corporation by reason of his position.

The defendant is the President and a director of the plaintiff corporation. At all material times he was married and a resident of Louisiana, a community property state. Between April 20, 1950 and November 29, 1950, the defendant purchased 3600 shares of plaintiff's common stock which is registered on the New York Curb Exchange and paid a total price therefor of $35,216. Between August 16, 1950 and November 24, 1950 defendant sold a like number of shares for a total of $74,581.79. 1200 of the shares purchased were acquired pursuant to an option granted to defendant by the corporation whereunder the defendant had the right to buy 1200 treasury shares of the company for 86% of the market price at the time the option was granted.

The transactions in question were duly reported to the Commission in accordance with the requirement of Section 16(a) of the Act. Whereupon the company was advised by the Commission of the possible liability of the defendant to it under Section 16(b) as a result of his trading activities. This suit followed and the matter is before the court now on motions for summary judgment filed by the plaintiff and the defendant.

█ In the stipulation of facts filed in the record the defendant admits short-term trading in the plaintiff's securities. Consequently the decision in this case will be based on a consideration of his defenses. Preliminarily defendant urges that his transactions in plaintiff's stock were consummated in good faith without the use of inside information [2] and further that the certificates of stock purchased by him within the six month periods were not the certificates sold by him during the same periods. These two defenses have been urged unsuccessfully in every reported case brought under Section 16(b). They were effectively disposed of by the Second Circuit in Smolowe v. Delendo Corporation, 136 F.2d 231, certiorari denied 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446, and Gratz v.

1. 15 U.S.C.A. § 78p(b)—The full text of the statute reads as follows:

"(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring

such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

2. Paragraph XIV of the stipulation reads: "Each and every stock transaction by defendant was consummated by him in the utmost good faith, resulted from no inside information and no damage has been sustained by plaintiff or any shareholder or shareholders in plaintiff corporation; defendant at no time made any 'short sales' of stock."

This language is interpreted as meaning defendant would so testify and plaintiff has no countervailing evidence to offer.

Claughton, 187 F.2d 46, certiorari denied 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353, and it would be supererogation to labor the matter further. Suffice it to say that this court follows the holding in the Smolowe and Gratz cases.

Defendant's third and fourth defenses relate only to the 1200 shares of stock acquired by him pursuant to the option granted by the corporation. With reference to these shares defendant argues that they do not come within the intendment of Section 16(b) because that section relates to "equity security" of the corporation and the treasury stock purchased under the option is not an equity security. This argument is founded in the circumstance that Section 3(a) (10) of the Act in defining the term "security" expressly mentions treasury stock whereas that phrase is not found in the definition of equity security in Section 3(a) (11). Section 3(a) (11) defines equity security as "any stock or similar security". Obviously that definition is broad enough to include a treasury share. In any event treasury stock by the very fact of purchase and issuance ceases to be such and becomes outstanding, or non-treasury, stock.

Defendant's further defense with reference to the stock purchased pursuant to the option is that the corporation is estopped from exercising its rights under Section 16(b) having waived those rights by extending the option. This argument ignores the fact that it is not the exercise of the option which is penalized under Section 16(b). If this defendant had not sold stock of his corporation within six months after he acquired the option stock, then of course Section 16(b) would not apply. Defendant further argues, however, that when the corporation voted defendant the option to acquire the stock it was intended that he sell on the short swing in order that he might make a profit and thereby be compensated for meritorious service to the corporation. Consequently, so the argument goes, the corporation cannot now demand the profits from transactions it implicitly approved.

This argument misconceives the purpose of Section 16(b). Section 16(b) became law following a Congressional investigation which showed unhealthy, if not unconscionable, dealings between officers and directors of a corporation and the corporation itself, some of which dealings involved options from the corporation to the officers and directors.[3] One of the purposes of Section 16(b) was to prevent these questionable transactions between insiders among themselves to the possible detriment of the minority shareholders and the public in general. It is true that Section 16(b) makes short-term profits of officers and directors inure to the corporation and provides that the corporation shall institute proper proceedings to claim these profits. The bringing of such suit by the corporation, however, cannot work out an estoppel. The statute directs the corporation to bring the suit and, realizing that corporations where insiders deal in its stock on the short swing are very often under the control of those insiders and consequently may be loath to bring such suits, or having brought them, to prosecute them actively, provides further that any shareholder may bring the suit in the name of the corporation where the corporation has not acted. The courts, also as a protective measure, have allowed shareholders to intervene freely where the corporation has brought suit pursuant to Section 16(b). Park & Tilford v. Schulte, 2 Cir., 1947, 160 F.2d 984. In other words, in order to protect minority shareholders and the public who have no control over the management of the corporation, Section 16(b) uses the corporation as an instrument, sometimes an unwilling instrument, by which the officer or director is forced to disgorge his short term profits. Under such circumstances there can be no estoppel. As a matter of fact the legislative purpose is made crystal clear in this regard by Section 29(a) of the Act which provides: "Any condition, stipulation, or pro-

3. See Report No. 1455 of the Senate Committee on Banking and Currency, 73d Cong., 2d Sess., pp. 55-58.

vision binding any person to waive compliance with any provision of this title * * * shall be void." 15 U.S.C.A. § 78cc. Since under this section the corporation cannot be estopped by an express waiver, an implied waiver must likewise be void.

Defendant's final defense relates only to one-half the profits realized on his short swing sales. The defendant asserts that since he was domiciled in Louisiana and married at all material times, only one-half of any profits from the transactions in suit were realized by him, the other half having been realized by his wife. Defendant relies on the line of cases which hold that the wife in Louisiana has a present vested one-half interest in the marital community. Phillips v. Phillips, 160 La. 813, 107 So. 584; Succession of Wiener, 203 La. 649, 14 So.2d 475. He cites both state and federal cases recognizing this present vested interest for tax purposes. Succession of Wiener, supra; Bender v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252; Fernandez v. Wiener, 326 U.S. 340, 66 S.Ct. 178, 90 L. Ed. 116. At the outset it may be observed that the fact the courts have recognized the wife's vested present interest in the community for tax purposes does not necessarily mean that recognition applies generally. For example, for tax purposes in calculating profit on dealings in specific corporate shares, the first in first out rule is observed. Internal Revenue Reg. 111, § 29.22(a)–8 (1943). As shown above in the Smolowe case the Second Circuit refuses to use that rule of thumb in cases arising under Section 16(b). Smolowe v. Delendo Corporation, supra; Gratz v. Claughton, supra.

Any marriage in Louisiana superinduces of right the marital community. Louisiana Civil Code, Article 2399. This marital community is made up of all of the earnings of the husband and wife during the existence of the community, profits from all effects over which the husband has the administration and enjoyment, all property acquired by either spouse unless purchased with separate funds, income from separate property of the husband, and income from separate property of the wife when ad-

ministered by the husband. Louisiana Civil Code, Article 2402. In fact all property, real or personal, acquired by either spouse during the community is presumed to be community property. Louisiana Civil Code, Article 2405. Not forming part of the community are profits from the separate property of the wife when not administered by the husband, damages recovered for personal injuries to the wife and any property purchased with separate funds or received by either spouse by donation or inheritance. Louisiana Civil Code, Article 2402.

The husband is the head and master of the community. He administers its effects, disposes of the revenues they produce and may alienate any community property by onerous title without the consent of his wife. He may even give away personal property belonging to the community without permission of his wife. Louisiana Civil Code, Article 2404. The husband's debts, however incurred, before or during the marriage, are collectible out of the community, while the creditors of the wife must look elsewhere for satisfaction. Davis v. Compton, 13 La.Ann. 396; Hawley v. Crescent City Bank, 26 La.Ann. 230. Only the husband binds the community, the wife may not except for the necessities of life. The husband is bound to pay the community debts, the wife is not. Scanlan v. Warwick, 10 La.Ann. 30; Luthy v. Werlein Co., 163 La. 752, 112 So. 709; Coco, Broussard & Dupuy v. Byrd, 2 La.App. 613. On dissolution of the community the wife may renounce her share rather than become obligated to pay its debts. Louisiana Civil Code, Article 2410.

Prior to the passage of the Sixteenth Amendment to the Constitution of the United States, the Supreme Court of Louisiana had held in a long line of decisions that the wife had no vested present interest in the community, that all she had was a mere expectancy. Guice v. Lawrence, 2 La.Ann. 226; Davis v. Compton, supra. After the advent of onerous income taxation, the Supreme Court of Louisiana repudiated the doctrine of the Guice case and held that the wife has a vested present in-

terest in the community. Phillips v. Phillips, supra; Succession of Wiener, supra. This change in the wife's interest was buttressed by subsequent decisions of the Louisiana Supreme Court which again repudiated prior decisions plus Article 2334 [4] of the Louisiana Civil Code by holding that earnings of the wife fall into the community. Hellberg v. Hyland, 168 La. 493, 122 So. 593; Houghton v. Hall, 177 La. 237, 148 So. 37; Succession of Howell, 177 La. 276, 148 So. 48.

From the above it is evident that under Louisiana law any profits made by the defendant in stock transactions ordinarily fall into the community. From this fact defendant argues that one-half of the stock in suit when it was acquired became his wife's, consequently half the proceeds of the sales are hers, therefore the corporation may recover from him only one-half of the profit made on the transactions.

Under Section 16(b) of the Securities and Exchange Act any profit realized by the defendant in his short term transactions must inure to the corporation. The only way to execute the congressional mandate in this case is for the corporation to receive all of the profit from these transactions, because any profit, however small, not recovered by the corporation remains in the community in which the defendant has an indivisible one-half interest and over which, incidentally, he has complete control. Defendant's contention that the wife owned one-half of the stock when purchased and therefore one-half of the profit from the sales disregards the nature of the marital community and the ownership of its property. Neither the husband nor the wife owns the community property or any specific piece thereof. Each owns in indivision one-half of all of the property and this ownership must continue until the dissolution of the community by death or divorce. Consequently the wife owns no stock as distinguished from her husband nor any profits from stock transactions. Such profits as accrue must necessarily fall into the marital community of which the defendant is one-half owner.

 It may be suggested that if Section 16(b) is enforced so as to deny the defendant all profit from his short-term transactions, the wife will necessarily be likewise penalized contrary to the community property law of Louisiana. That may be true. Nevertheless, Congress in passing Section 16(b) was acting in a field in which the Constitution has given it authority to act. In such circumstance the federal statutory policy must prevail for the federal law is paramount. Wissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424; Testa v. Katt, 330 U.S. 386, 389, 67 SCt. 810, 91 L.Ed. 967; Schwabacher v. United States, 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305. In the Wissner case the Supreme Court, in reversing the Supreme Court of California, held that a federal statute granting the assured the right to name the beneficiary in his National Service Life Insurance policy must prevail over the established right of the wife under the California community property law to one-half the proceeds of an insurance policy whose premiums were paid with marital community funds.

Congress in enacting Section 16(b) sought to enforce compliance by officers and directors of corporations with their fiduciary duty of protecting the corporation and the shareholders thereof. In effect this statute says that when an officer or director profits through buying and selling the corporate stock within a six-month period that officer or director is not acting for himself or for the marital community but for the corporation. So interpreted there is no conflict with state law. In any event it cannot be seriously argued that the Congress has no right in the field of

---

4. Article 2334 Louisiana Civil Code:

\* \* \* \* \* \*

"The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property."

\* \* \* \* \* \*

interstate commerce to impose such responsibility on corporate officials. If in exercising that right conflict with state law has arisen, state law must give way. Wissner v. Wissner, supra.

Judgment for plaintiff.