231 F.2d 843
 Paul MAGIDA, a stockholder of The Vulcan Detinning Company, suing on behalf of himself and all other stockholders similarly situated, and on behalf and in the right of The Vulcan Detinning Company, Plaintiff-Appellee,
v.
CONTINENTAL CAN COMPANY, Inc., Defendant-Appellant, and
The Vulcan Detinning Company, Defendant-Appellee.
 No. 275.
 Docket 23904.
 United States Court of Appeals Second Circuit.
 Argued March 5, 1956.
 Decided April 2, 1956.
 Writ of Certiorari Denied June 4, 1956.
 
 See 76 S.Ct. 1031.
 COPYRIGHT MATERIAL OMITTED Mark F. Hughes, New York City (Willkie, Owen, Farr, Gallagher & Walton and Vincent R. FitzPatrick, New York City, on the brief), for defendant-appellant.
 Morris J. Levy, New York City, for plaintiff-appellee.
 Before CLARK, Chief Judge, MEDINA, Circuit Judge, and GALSTON, District Judge.
 CLARK, Chief Judge.
 
 
 1
 This is an action under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), for recovery of shortswing profits claimed to be due The Vulcan Detinning Company on a purchase and sale of its common stock by Continental Can Company, Inc., owner of more than 10 per cent of Vulcan's equity securities. The action is brought by one Paul Magida, a stockholder of Vulcan. Judge Ryan gave judgment for plaintiff in right of the corporation for the amount of the profits, plus interest from the date of realization.
 
 
 2
 In April, 1950, Continental purchased 4,115 shares of Vulcan common stock at a cost of $118,279.25 from the executor of the estate of F. P. Assman, to whom letters testamentary were issued in September, 1947. At the time of Assman's death in August, 1947, he had owned 823 shares of Class A stock, which in February, 1948, were exchanged for the 4,115 shares later sold to Continental. On August 31, 1950, each share of Vulcan common stock was reclassified into two shares. On September 12, 1950, Continental sold 120,000 shares at $20.25 per share, resulting in a net profit on the 4,115 shares of $34,551.85. This is the amount here in issue.
 
 
 3
 In March, 1951, plaintiff purchased ten shares of Vulcan common stock; and in May, 1951, through his attorney, he requested Vulcan to institute suit to recover the profit concededly made by Continental on the sale. The president of Vulcan refused to do so on the grounds that the sale was made at Vulcan's suggestion and for the best interest of Vulcan stockholders, and that to bring such suit would clearly violate the principles of fair play. More than sixty days thereafter plaintiff instituted this suit against Continental and Vulcan.
 
 
 4
 Continental pleaded three affirmative defenses, and at the trial moved for leave to amend its answer so as to plead a fourth complete affirmative defense and an additional partial affirmative defense. Neither the third defense nor the additional partial defense is urged here.[1] Of those before us, the first defense alleged, in substance, that Vulcan and its stockholders were estopped from claiming any profits realized by it on the purchase and sale of Vulcan common stock and that any such recovery would be unjust, inequitable, and unconscionable, since the sale was made at the specific instance and request of Vulcan, was in its best interest and that of its stockholders, and was made pursuant to a plan conceived, developed, promoted, and consummated by Vulcan.
 
 
 5
 Conceding that the sale was made at Vulcan's request and for Vulcan's advantage, it also appears that the sale was of benefit to Continental because it would release to Continental a substantial amount of cash not presently available for use in its business. Further, Continental was the owner of more than a majority of Vulcan's voting securities, and Continental's affirmative vote was essential before any proposition could be approved by the stockholders of Vulcan. Judge Ryan could therefore justifiably find that the sale "was the free act, choice and decision of both Continental and Vulcan and that it served the interests of both."
 
 
 6
 But, apart from these factual considerations negativing the existence of an estoppel based on equitable principles, we think that as a matter of law the language and purpose of the statute preclude an estoppel based upon instigation by or benefit to the corporation whose shares are traded. See Park & Tilford v. Schulte, 2 Cir., 160 F. 2d 984, 989, note 1, certiorari denied 332 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347; Pellegrino v. Nesbit, 9 Cir., 203 F.2d 463, 467, 37 A.L.R.2d 1296; Jefferson Lake Sulphur Co. v. Walet, D.C.E.D.La., 104 F.Supp. 20, affirmed Walet v. Jefferson Lake Sulphur Co., 5 Cir., 202 F.2d 433, certiorari denied 346 U.S. 820, 74 S.Ct. 35, 98 L.Ed. 346. Even though Continental may have acted in good faith, may have overlooked the April purchase at the time of sale, and may not have made use of inside information of which the other stockholders were ignorant, these factors cannot operate to negate the statutory liability which exists "irrespective of any intention on the part of such beneficial owner * * *." Securities Exchange Act of 1934, § 16(b), 15 U.S. C. § 78p(b). See Gratz v. Claughton, 2 Cir., 187 F.2d 46, 49, certiorari denied 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353; Smolowe v. Delendo Corp., 2 Cir., 136 F. 2d 231, 148 A.L.R. 300, certiorari denied Delendo Corp. v. Smolowe, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446.
 
 
 7
 Since the policy of the statute is to protect minority stockholders and the public against manipulated market fluctuations, certainly this stockholder, who became such after the acts in question had taken place, cannot be estopped by corporate acts, even those having the apparent approval of a majority of stockholders. The action under § 16(b) is derivative in the sense that the corporation is the instrument, sometimes unwilling, for the effectuation of the statutory policy; but this so-called derivative nature of the right, when coupled with the doctrine of estoppel, cannot serve to defeat the very policy it was created to advance.
 
 
 8
 Appellant further contends that the securities are exempt from the operation of the Act by virtue of SEC Rule X-16A-4, 17 CFR § 240.16a-4, which at the time of these transactions exempted from the operation of § 16(a) and (b) "securities held in the estate of a deceased person during a period of 2 years following the appointment and qualification of the executor or administrator." Effective November 1, 1952, this rule was revised to read as follows:
 
 
 9
 "(a) During the period of twelve months following their appointment and qualification, securities held by the following persons shall be exempt from sections 16(a) and (b):
 
 
 10
 "(1) Executors or administrators of the estate of a decedent;"
 
 
 11
 Although appellant contends that this revised rule is a departure from the meaning of the previous one, it is in fact (except for the change in time period) only a clarification.[2] See Cook & Feldman, Insider Trading under the Securities Exchange Act, 66 Harv.L.Rev 385, 390. Under the old rule, therefore, the exemption attaches only during the 2-year period; and, since in this case the purchase admittedly took place more than 2 years after the qualification of the executor, the rule has no application. Appellant's position, apparently to the effect that once the shares have been held in an estate for the required 2 years they are endowed wherever held with an exemption of indefinite duration, is transparently fallacious.
 
 
 12
 Finally, we reach the question of the legal sufficiency of the proposed complete defense alleging that the suit was champertous.[3] Judge Ryan refused to allow amendment of the answer to include this defense. He did, however, permit an offer of proof, consisting primarily of depositions, purporting to show that plaintiff's attorney is the real party in interest, that his sole motive in prosecuting the action is to obtain a counsel fee, and that no true relation of attorney and client exists.
 
 
 13
 Continental argues the improbability of plaintiff's having instituted the action unless his attorney had undertaken the expenses of suit. For (by defendant's calculation) plaintiff, the holder of ten shares of Vulcan common stock, can, if successful in this action, hope to increase his personal equity interest in Vulcan by $1.10; while if unsuccessful, he would be liable for costs and expenses aggregating many hundred times that amount. Plaintiff's attorney, Markowitz, not now the attorney of record, in his deposition testified that plaintiff, under the terms of an oral retainer, had undertaken to pay such costs and expenses. The true facts of the arrangements between them were, however, heavily obscured by numerous invocations of the attorney-client privilege by the attorney of record. See Magida v. Continental Can Co., D.C.S.D. N.Y., 12 F.R.D. 74.
 
 
 14
 But we think that, even if the proposed Fourth Defense were fully capable of proof, it would be insufficient in law to defeat the suit. The action is brought on behalf of the corporation to protect the rights of stockholders and of the public. The relationship between his attorney and the plaintiff, who is the mere vehicle of recovery, cannot defeat the rights of the corporation and other stockholders, to whom the recovery accrues. See Young v. Higbee, 324 U.S. 204, 214, 65 S.Ct. 594, 89 L.Ed. 890; Magida v. Continental Can Co., supra, D.C.S.D.N.Y., 12 F.R.D. 74, 78.
 
 
 15
 If there has been a violation of N. Y. Penal Law § 274 as alleged, offenders are liable to its criminal sanction. But the public policy of New York cannot nullify this federally created right, established for the effectuation of a broad federal policy. So Peck v. Heurich, 167 U.S. 624, 17 S.Ct. 927, 42 L.Ed. 302, and Merlaud v. National Metropolitan Bank of Washington, D. C., 65 App.D.C. 385, 84 F.2d 238, certiorari denied 299 U.S. 584, 57 S.Ct. 109, 81 L.Ed. 430, cited by appellant, are distinguishable in that in both the plaintiff acquired his status as such through champertous acts, whereas here the plaintiff's position as vindicator of the corporate rights comes from the statute itself.
 
 
 16
 Judge Ryan has specifically reserved these matters as alleged by Continental for later consideration in connection with the allowance of a reasonable attorney's fee. A showing of misconduct is naturally pertinent to the determination of an appropriate fee.
 
 
 17
 Although an allowance of interest from the time of realization of profit is not mandatory, we see no reason to deny it here. See Park & Tilford v. Schulte, supra, 2 Cir., 160 F.2d 984, certiorari denied 332 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347; Blau v. Mission Corp., 2 Cir., 212 F.2d 77, certiorari denied Mission Corp. v. Blau, 347 U.S. 1016, 74 S. Ct. 872, 98 L.Ed. 1138. That portion, too, of the judgment below we find fully authorized.
 
 
 18
 Judgment affirmed.
 
 
 
 Notes:
 
 
 [1]
 The defense that Magida did not own his stock at the time of the purchase and sale was negatived by Blau v. Mission Corp., 2 Cir., 212 F.2d 77, certiorari denied Mission Corp. v. Blau, 347 U.S. 1016, 74 S.Ct. 872, 98 L.Ed. 1138. The partial defense that no counsel fee should be allowed appellee's attorney was ruled by the judge a matter for consideration on later application for such fee
 
 
 [2]
 SEC Release No. 4754, dated Sept. 24, 1952, reads as follows:
 "The new rule X-16A-4 clarifies the prior rule by indicating that the exemption provided in the rule is applicable only when the securities were held by the persons enumerated in the rule. It also reduces the period of time during which the exemption is effective from two years to one year."
 
 
 [3]
 "For a Fourth Separate and Complete Defense
 "17. Upon information and belief, that the action has been commenced and prosecuted not on behalf of the defendant Vulcan Detinning Company and its stockholders, but for the benefit of the attorney for the plaintiff and for the purpose and with the intention that said attorney shall receive an attorney's fee out of any amount that may be recovered by way of judgment in the action; that no bona fide relationship of attorney and client exists between the plaintiff and his attorneys; that the arrangement between the plaintiff and his attorneys by which the action is being prosecuted is illegal and in violation of law and specifically is a violation of Section 274 of the New York Penal Law and is contrary to the public policy of the State of New York and of the United States and that any recovery in the action would be contrary to the public policy of the State of New York and of the United States and would be unjust, inequitable and unconscionable."