**Betty VOLK, Plaintiff,**

v.

**Robert ZLOTOFF, Abraham M. Raboy, Alfred H. Juechter, and Yoo-Hoo Chocolate Beverage Corporation, Defendants.**

**No. 67 Civ. 4076.**

United States District Court
S. D. New York.

May 13, 1968.

---

6. An appellation given the running correspondence by Plaintiff's counsel striking me as entirely appropriate.

Sidney L. Garwin, New York City, for plaintiff, Sidney L. Garwin, Bertram Bronzaft, New York City, of counsel.

Martin Ozer, New York City, for defendants, Zlotoff, Raboy and Juechter.

Royall, Koegel, Rogers & Wells, New York City, for defendant, Yoo-Hoo Chocolate Beverage Corp.; Stuart A. Jackson, New York City, of counsel.

## OPINION

HERLANDS, District Judge:

■ Defendants' motion for summary judgment presents a novel and important question under the "short-swing" profits provision of the Securities Exchange Act of 1934: whether a mutual rescission of the exercise of a stock purchase option may immunize a transaction against liability under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b).[1]  We hold that it does not.

---

1.  15 U.S.C. § 78p(b) provides:

"§ 78p.  Directors, officers, and principal stockholders

\* \* \* \* \*

(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection

Plaintiff, a shareholder of Yoo-Hoo Chocolate Beverage Corporation (hereafter Yoo-Hoo), commenced this action on October 19, 1967 to recover "short-swing" profits from three individual defendants, pursuant to Section 16(b) of the Securities Exchange Act of 1934.

The individual defendants, all of whom are officers of Yoo-Hoo, are Robert Zlotoff, executive vice-president and secretary; Abraham M. Raboy, director, vice-president and treasurer; and Alfred H. Juechter, director and vice-president (hereafter defendants). Defendant Yoo-Hoo is a public corporation, whose stock is duly registered and traded on the National Stock Exchange, a national exchange as defined by the Securities Exchange Act of 1934.

The following facts are undisputed. On or about January 1, 1967, defendants were duly granted stock options enabling them to purchase specified amounts of stock at $1.75 per share. At that time, defendants already owned other shares of Yoo-Hoo stock.

In the case of defendant Zlotoff, he made sales of the stock both before and after he exercised his option on July 3, 1967 to purchase 10,000 shares and on July 11, 1967 to purchase 200 shares. Thus, as shown on the chart below, he sold a total of 3,200 shares on June 30, 1967 and a total of 7,000 shares on three dates subsequent to July 11, 1967 (July 14th: 3,000 shares, July 31: 2,500 shares and August 12th: 1,500 shares).

The exercise of the option to purchase 10,000 shares took place on July 3, 1967 although defendants' Rule 9(G) Statement (page 2) alleges that the date is "June 3, 1967". This evidently is a typographical error inasmuch as the prefatory words in paragraph 3 of the said Statement, in which the foregoing date appears, alleges "As set forth in the complaint, * * *." The complaint, paragraph 7., recites the date of July 3, 1967 as the date when the option to purchase 10,000 shares was exercised. In any event the stenographic discrepancy between June 3 and July 3, 1967, is immaterial for present purposes because either date falls within the six-months proscribed period.

In the case of defendant Raboy, he made both sales of the stock, amounting to a total of 8,000 shares, prior to said defendant's exercise of his option on July 31, 1967 to purchase 10,000 shares, as shown on the chart below.

In the case of defendant Juechter, he made both sales of the stock, amounting to a total of 2,600 shares, subsequent to July 3, 1967 when said defendant exercised his option to purchase 5,000 shares.

Defendants' position with respect to the sales of stock occurring prior to the exercise of their respective options is that said sales were made (as more particularly explained hereinafter) for the purpose of raising money in order to be able to exercise the purchase options. Plaintiff's position is that the purpose of said sales is utterly immaterial.

To summarize: between June 30 and August 12, 1967, defendants exercised their stock options and thereby purchased a total of 25,200 shares of Yoo-Hoo stock; and on various dates between June 30

with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

and August 12, 1967, defendants sold a total of 20,800 shares of said stock. These shares that were sold had been owned by defendants prior to the exercise of their options.

The details of these transactions will now be tabulated.

Defendant Zlotoff acquired by exercise of stock option and effected sales of common stock of Yoo-Hoo as follows:

| Date | Shares Sold | Approximate Sales Price Per Share | Shares Acquired By Exercise Of Stock Option | Approximate Purchase Price Per Share |
|------|------|------|------|------|
| June 30, 1967 | 200 | $ 7.75 | | |
| June 30, 1967 | 3000 | 7.75 | | |
| July 3, 1967 | | | 10,000 | $1.75 |
| July 11, 1967 | | | 200 | 3.50 |
| July 14, 1967 | 3000 | 9.50 | | |
| July 31, 1967 | 2500 | 10.00 | | |
| Aug. 12, 1967 | 1500 | 8.00 | | |

Defendant Raboy acquired by exercise of stock option and effected sales of the common stock of Yoo-Hoo as follows:

| Date | Shares Sold | Approximate Sales Price Per Share | Shares Acquired by Exercise of Stock Option | Approximate Purchase Price Per Share |
|------|------|------|------|------|
| July 11, 1967 | 6000 | $ 8.00 | | |
| July 28, 1967 | 2000 | 10.00 | | |
| July 31, 1967 | | | 10,000 | $1.75 |

Defendant Juechter acquired by exercise of stock option and effected sales of the common stock of Yoo-Hoo as follows:

| Date | Shares Sold | Approximate Sales Price Per Share | Shares Acquired by Exercise of Stock Option | Approximate Purchase Price Per Share |
|------|------|------|------|------|
| July 3, 1967 | | | 5,000 | $1.75 |
| July 7, 1967 | 1100 | $8.00 | | |
| July 14, 1968 | 1500 | 9.50 | | |

Defendants, however, have presented factual circumstances, which, they claim, exculpate them from Section 16(b) liability as a matter of law. (See Defendants' Rule 9(G) Statement and Affidavits of Max A. Geller, Stuart A. Jackson, Robert Zlotoff, Abraham M. Raboy and Alfred A. Juechter).

According to defendants, on or about June 1, 1967, they were asked by Yoo-Hoo to exercise the stock options which had been granted to them on or about January 1, 1967. The purpose of this request was to provide Yoo-Hoo with short-term working capital. The defendants indicated that it would be necessary to sell some of the Yoo-Hoo stock which they already owned in order to raise the money needed to exercise the options. Yoo-Hoo's general counsel, who was consulted as to propriety of the contemplated transaction, advised defendants that the exercise of the stock purchase options in connection with the sale of other Yoo-Hoo stock was not a transaction proscribed by Section 16(b). (See letter of Philip A. Friedman of June 28, 1967, attached as Exhibit B to Defendants' Memorandum of Law). Acting pursuant to the advice of Yoo-Hoo's general counsel and within a six-months period, defendants exercised their options and made sales of the other shares of Yoo-Hoo stock which they already owned.

Subsequently, defendants were informed by special counsel to Yoo-Hoo that their transactions were arguably proscribed by Section 16(b). (See Affidavit of Stuart A. Jackson, sworn to February 9, 1968 attached as Exhibit C to Defendants' Memorandum of Law).

On October 9, 1967, the board of directors of Yoo-Hoo passed a resolution authorizing the rescission of the exercise of the stock options in order to "restore the parties to the status quo that existed prior to the exercise of such options." (See Minutes of Board of Directors Meeting of Yoo-Hoo of October 9, 1967 attached as Exhibit D to Defendants' Memorandum of Law).

Agreements were entered into between defendants and Yoo-Hoo, rescinding the exercise of the stock options and providing for the return to Yoo-Hoo of the shares acquired pursuant to the exercise of the options and for the return to defendants of the consideration paid to Yoo-Hoo. Moreover, the stock options were to "remain in full force and effect and fully exerciseable." (See Exhibit E attached to Defendants' Memorandum of Law). This rescission was accomplished on October 9, 1967, prior to the commencement of this litigation. Of course, the rescission did not affect the sales of the other shares of Yoo-Hoo stock which defendants had made in June, July and August 1967.

■ In opposing the motion for summary judgment, plaintiff states that she does not now have information sufficient to determine the correctness of defendants' assertions upon which they base their argument for exoneration of liability. She requests that defendants' motion be denied in order that pre-trial discovery be conducted to probe the veracity of these factual contentions. Alternatively, plaintiff argues that, assuming *arguendo* the truth of these contentions, they are legally insufficient to bar the imposition of Section 16(b) liability. In her Supplementary Memorandum of Law, plaintiff urges that the Court "should on its own motion grant summary judgment to the plaintiff in order to avoid the necessity of the Court having to once again determine on the same facts and law, plaintiff's motion for summary judgment" (p. 11). The Court will treat this request as a cross-motion for summary judgment. Bell v. Waterfront Comm'n of New York Harbor, 183 F. Supp. 175, 178–179 (S.D.N.Y.) aff'd, 279 F.2d 853 (2d Cir. 1960); Kent v. United States, 228 F.Supp. 929, 931 (S.D.N.Y. 1964); 6 Moore Federal Practice ¶ 56.12 (2d ed. 1966).

■ In order to protect minority shareholders and the public, Section 16 (b) aims to prevent the unfair use of information by insiders. See, e. g., Magida v. Continental Can Co., 231 F.2d 843, 846 (2d Cir.), cert. denied, 351 U.S. 972, 76 S.Ct. 1031, 100 L.Ed. 1490 (1956); Smo-

lowe v. Delendo Corp., 136 F.2d 231, 235, 148 A.L.R. 300 (2d Cir.), cert. denied 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943). The statute was designed to eliminate the widespread abuses by corporate fiduciaries that had been uncovered by the stock market investigation.[2]

■ Section 16(b) is a remedial statute. It should be liberally construed to accomplish its purpose. The courts have interpreted it in "the broadest possible"[3] terms, with all doubts and ambiguities resolved against corporate insiders. Blau v. Oppenheim, supra, 250 F.Supp. at 884–885. See also Stella v. Graham-Paige Motors Corp., 232 F.2d 299, 302 (2d Cir.), cert. denied, 352 U.S. 831, 77 S.Ct. 46, 1 L.Ed.2d 52 (1956) (dictum); Gratz v. Claughton, 187 F.2d 46, 51 (2d Cir.), cert. denied, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1951) (dictum); Smolowe v. Delendo Corp., supra, 136 F.2d at 238–239 (dictum).

Our Court of Appeals in Blau v. Rayette-Faberge, Inc., 389 F.2d 469, 474 (2d Cir. 1968), has recently taken occasion to emphasize the legislative purpose of Section 16(b) and the expansive interpretation to be accorded to this statute. See Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

■ For the purpose of accomplishing the objectives of Section 16(b), all insider trading within a less than six-months period is proscribed—irrespective of whether, in fact, there is an unfair use of inside information or an intention to reap "short-swing" profits. The imposition of civil liability is "based upon an objective measure of proof". Smolowe v. Delendo Corp., supra, 136 F.2d at 235; Adler v. Klawans, 267 F.2d 840, 845 (2d Cir. 1959); Magida v. Continental Can Co., supra, 231 F.2d at 846.[4]

■■ That the insider may have intended to benefit the corporation or may have acted at the corporation's behest does not create immunity against Section 16(b) liability. The corporation—which often is the unwilling instrument in enforcing the statutory policy—will not be estopped from suing the corporate insid-

2. These abuses are detailed in S.Rep.No. 1455, 73d Cong., 2d Sess. 55 (1934), which states: "Among the most vicious practices unearthed at the hearings before the subcommittee was the flagrant betrayal of their fiduciary duties by directors and officers of corporations who used their positions of trust and confidential information which came to them in such positions, to aid them in their market activities. Closely allied to this type of abuse was the unscrupulous employment of inside information by large stockholders who, while not officers and directors, exercised sufficient control over the destinies of their companies to enable them to acquire and profit by information not available to others."
10 S.E.C.Ann.Rep. 50 (1944) points out: "§ 16(b) of the Securities Exchange Act of 1934 was enacted as a result of Congressional investigation into the financial community which turned up a pattern of manipulation and misuse of inside information by corporate officers, directors and large stockholders. Prior to the enactment of the Act, 'profits from sure thing speculation' in the stocks of their corporations were more or less generally accepted by the financial community as part of the emolument for serving as a corporate officer or director notwithstanding the flagrantly inequitable character of such trading." See also, Loomis, The Securities Exchange Act of 1934 and the Investment Advisors Act of 1940, 28 Geo.Wash.L.Rev. 214, 216–217 (1960).

3. Truncale v. Blumberg, 80 F.Supp. 387, 390 (S.D.N.Y.1948); Blau v. Oppenheim, 250 F.Supp. 881, 884 (S.D.N.Y.1966).

4. Justification for the objective manner in which § 16(b) operates was offered by Thomas G. Corcoran, chief spokesman for the draftsman of the Act as follows:
"You hold the director, irrespective of any intention or expectation to sell the security within 6 months after, because it will be absolutely impossible to prove the existence of such intention or expectation, and you have to have this *crude rule of thumb*, because you cannot undertake the burden of having to prove that the director intended, at the time he bought, to get out on a short swing." Hearings on Stock Exchange Practices Before the Senate Comm. on Banking and Currency, 73d Cong., 1st Sess., pt. 15, at 6557 (1934) (emphasis added).

er. See, e. g., Magida v. Continental Can Co., supra, 231 F.2d at 846 (stock was sold at the issuer's suggestion and with the approval of a majority of the shareholders); Marquette Cement Mfg. Co. v. Andreas, 239 F.Supp. 962, 966 (S. D.N.Y.1965) (issuing corporation knew of transactions and concurred in them); Perfect Photo Inc. v. Grabb, 205 F.Supp. 569, 572 (E.D.Pa.1962) (sole shareholder of corporation agreed to finance defendant's purchase); Blau v. Allen, 163 F. Supp. 702, 705 (S.D.N.Y.1958) (insider desired to benefit the corporation); Perlman v. Timberlake, 172 F.Supp. 246, 254 (S.D.N.Y.1959) (transaction was approved by the corporation); Jefferson Lake Sulphur Co. v. Walet, 104 F.Supp. 20, 23–24 (E.D.La.1952), aff'd 202 F.2d 433 (5th Cir.), cert. denied, 346 U.S. 820, 74 S.Ct. 35, 98 L.Ed. 346 (1953) (corporation extended stock option to insider).[5]

The disintegrating erosion by judicially created exceptions would undermine the efficacy of Section 16(b). Only by an attitude of "uncompromising rigidity",[6] analogous to that applicable to insider trading by a fiduciary,[7] can the courts maintain the prophylactic standard of behavior imposed by this statute.

Defendants take the position that the rescission of the exercise of the stock options eliminates both the matching "purchase and sale" and the "realization of profit" which are requisite to a finding of liability under Section 16(b). In their view, as a result of the rescission, no "purchase" within the meaning of Section 16(b) occurred; and, therefore, there were no matching "sale" and "purchase" within the statutory period. Defendants argue that, because there were no matching purchase and sale, there was no "realization of profit" within the meaning of Section 16(b). The sales of Yoo-Hoo stock were not rescinded. However, defendants claim, there was nothing unlawful in making these sales and thereby making profits because there was no matching purchase—the exercise of the option having been rescinded.

Plaintiff counters with the argument that Section 16(b) was violated when defendants made the purchases and sales of Yoo-Hoo stock during June, July and August, 1967; and that, at that point in time, defendants realized a profit of $144,000., which should inure to the corporation. Plaintiff characterizes the so-called rescission of the exercise of the stock option as a futile attempt by Yoo-Hoo and the defendants to waive compliance with the provisions of Section 16 (b),—conduct which is prohibited by Section 29 of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc.[8]

5. The mechanical and arbitrary manner in which Section 16(b) operates has been criticized by certain commentators. See, e. g., Munter, Section 16(b) of the Securities Exchange Act of 1934: An Alternative to "Burning Down the Barn in Order to Kill the Rats", 52 Cornell L.Q. 69 (1966); Painter, The Evolving Role of Section 16(b), 62 Mich.L.Rev. 649 (1964); Hsiu-Kwang Wu, An Economist Looks At Section 16(b) of the Securities Exchange Act of 1934, 68 Colum.L.Rev. 260 (1968).

6. Cf. Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 62 A.L.R. 1 (1928) (Cardozo, Ch. J.).

7. Cf. Troiano, Bankruptcy Act—Section 249 of Chapter X—Disallowance Of Compensation To Fiduciary For Trading In Stock Of Debtor During Corporate Re-

organization—"Uncompromised Rigidity", 34 Brooklyn L.Rev. 179 (1968).

8. 15 U.S.C. § 78cc provides in relevant part:
"§ 78cc. Validity of contracts
(a) Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.
(b) Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule

Whether there was a violation of Section 16(b) prior to the rescission is the primary question. The Court holds that there was such a violation.

■ The exercise of a stock option to acquire securities is a "purchase" within the meaning of Section 16(b). Blau v. Ogsbury, 210 F.2d 426 (2d Cir. 1954); Falco v. Donner Foundation, Inc., 208 F.2d 600, 40 A.L.R.2d 1340 (2d Cir. 1953); Shaw v. Dreyfus, 172 F.2d 140 (2d Cir. 1949), cert. denied 337 U.S. 907, 69 S.Ct. 1048, 93 L.Ed. 1719 (1950); Park & Tilford v. Schulte, 160 F.2d 984 (2d Cir.), cert. denied, 332 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347 (1947).[9]

Because sales were followed by purchases (the exercise of the stock options) and purchases (the exercise of the stock options) were followed by sales—both sets of matching transactions occurring within a six-months period—Section 16(b) was violated.

The Court holds that the subsequent rescission of the exercise of the stock options does not remove these transactions from the ambit of Section 16(b).

At the very times that the matching purchases and sales were consummated, the corporation came into possession of a right of action against the defendants for violating Section 16(b). Instead of pursuing this claim, the corporation attempted to protect its insiders from liability by rescinding the exercise of the stock options. The exercise of the stock options was, however, an historical event that could not be wiped out. The corporation's claim against the offending insiders was not subject to defeasance by the condition subsequent of a mutual rescission of one of the matching transactions. Lewis v. Mason, CCH Fed.Sec.L. Rep. ¶ 90,915 (S.D.N.Y.1959).

This rescission was not in the least detrimental to defendants: they were reinvested by the rescission with the very same stock options, which they could exercise in the future,[10] and they retained the profits from the sales. If anything, the practical outcome of the rescission was to benefit the insiders substantially through their very violation of the statute.

■ The settlement by a corporation of a Section 16(b) claim against an insider for an inadequate amount will not preclude an action by a shareholder. Blau v. Hodgkinson, 100 F.Supp. 361, 371 (S.

---

or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision, rule, or regulation: *Provided,* (A) That no contract shall be void by reason of this subsection because of any violation of any rule or regulation prescribed pursuant to paragraph (2) or (3) of subsection (c) of section 78o of this title, and (B) that no contract shall be deemed to be void by reason of this subsection in any action maintained in reliance upon this subsection, by any person to or for whom any broker or dealer sells, or from or for whom any broker or dealer purchases, a security in violation of any rule or regulation prescribed pursuant to paragraph (1)

of subsection (c) of section 78o of this title, unless such action is brought within one year after the discovery that such sale or purchase involves such violation and within three years after such violation."

9. The Securities Exchange Act of 1934 contains a built-in definition of the word "purchase". Section 3(a) (13) of the Act, 15 U.S.C. § 78c(a) (13) provides: "The terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire."

On the other hand, it is interesting to note that the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 et seq. does not expressly define the word "purchase". See Judge Friendly's analysis in SEC v. Sterling Precision Corp., 393 F.2d 214 (2d Cir. March 26, 1968).

10. The issue of whether Section 16(b) liability would attach if defendants had not retained their stock options is not now before the Court for decision.

D.N.Y.1951); Pappas v. Moss, 257 F. Supp. 345, 366 n. 10 (D.N.J.1966).

■ Similarly, a corporation is prohibited by Section 29(a) of the Securities Exchange Act of 1934 from waiving compliance with any of the provisions of the Act, including Section 16(b). See, Jefferson Lake Sulphur Co. v. Walet, supra, 104 F.Supp. at 24; Perfect Photo Inc. v. Grabb, supra, 205 F.Supp. at 572; Magida v. Continental Can Co., CCH Fed.Sec.L.Rep. ¶ 90,725 (S.D.N.Y.1955).

Whether the rescission is formally characterized as a corporate waiver or as an inadequate settlement of a Section 16(b) claim, liability still attaches under the statute. Regardless of nomenclature, defendants have made "short-swing" profits in contravention of Section 16(b).

Hennesey v. Fein, 184 F.Supp. 86 (S. D.N.Y.1958), on which defendants place principal reliance, is sharply distinguishable. In that case, a shareholder's derivative suit had been brought to invalidate certain transactions that had been entered into between defendants and the corporation. As part of a judicially approved settlement, these stock transactions were rescinded. Subsequently, another shareholder brought an action under Section 16(b), in which liability was premised on the rescinded transactions. The Court held that in view of the judicially approved rescission the stock transactions were not purchases within the meaning of Section 16(b) and that the settlement was *res judicata* in the Section 16(b) action.

In the present case, there is no judicially approved settlement of a sharply contested dispute between adverse parties, as was the situation in *Hennesey*. Rather, this is an attempt by the corporation and insiders—the very parties to the stock transactions—to frustrate retroactively the operation of the provisions of Section 16(b).

Also inapposite is the recent case of Globus, Inc. v. Jaroff, 279 F.Supp. 807 (S.D.N.Y.1968), not cited by either party, which involved a stockholders' derivative action brought under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10B–5, 17 C.F.R. § 240.10b–5. The action was rendered moot because the option agreement therein was cancelled before any stock had been issued under it thereby "accomplishing the object of plaintiff's action" (279 F.Supp. at 809). Thus, aside from the circumstance that *Globus* involved an action under Section 10(b) as distinguished from Section 16(b) of the Securities Exchange Act of 1934, the Court found that the action had become academic. No such situation exists in the case at bar where the options were exercised and then restored to defendants and where the statutory purpose of the Section 16(b) action still remains to be vindicated.

There is no need to grant plaintiff's request for discovery under F.R.Civ.P. 56(f). Pretrial discovery could not develop any facts that could alter the legal conclusion that ineluctably follows from the presently undisputed evidence. Compare Waldron v. British Petroleum Co., 231 F.Supp. 72, 94 (S.D.N.Y.1964).

The Court holds that defendants' acts gave rise to Section 16(b) liability and that their *ex post facto* rescission of the exercise of their options does not exonerate them from that liability, under the circumstances of this case.

The Court grants partial summary judgment in favor of plaintiff on the issue of liability and denies defendants' motion for summary judgment dismissing the complaint.

So ordered.