**Harry LEWIS, Plaintiff,**

v.

**Meshulam RIKLIS and AITS, Inc., Defendants.**

**No. 75 Civ. 6220 (CHT).**

United States District Court, S. D. New York.

Feb. 10, 1978.

As Amended Feb. 16, 1978.

Levy & Levy, New York City, for plaintiff; Morris J. Levy, New York City, of counsel.

Rubin, Baum, Levin, Constant & Friedman, New York City, for defendant Riklis; Martin A. Coleman, Toni Robinson, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Plaintiff has moved the Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, summary judgment is granted in favor of the defendants and the complaint is dismissed.

Plaintiff brought this action under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), to recover short-swing profits that the defendant Meshulam Riklis allegedly received from a series of transactions involving the common stock of the issuer, AITS, Inc. ("AITS").

The following facts are undisputed. Riklis was a director of AITS and also the beneficial owner of more than ten per cent of AITS's equity securities at all times relevant to this action. On June 25, 1973, he entered into an agreement for the sale of 25,000 shares of AITS common stock to Harold S. Devine for a $160,000 promissory note ($6.40 per share). On August 9, 1973, Riklis purchased 100,000 shares of AITS common stock for $500,431 ($5.00431 per share) and an additional 37,500 AITS shares from the issuer on September 28, 1973 for $150,000 ($4.00 per share). Riklis filed a Form 4 Report with the Securities and Exchange Commission, pursuant to the provisions of Section 16(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(a). This report, dated November 7, 1973, stated that the June 25 sale "was subsequently rescinded as of the date of the sale." On December 11, 1975, plaintiff Harry Lewis, an AITS stockholder, instituted this action pursuant to section 16(b) on behalf of the issuer to recover the short-swing profits realized by the defendant.

The disputed facts revolve around the June 25, 1973 agreement between Riklis and Devine for the sale of 25,000 shares of AITS common stock. Plaintiff alleges that the shares were sold for the aggregate sum of $160,000 ($6.40 per share) and that Riklis's subsequent purchase of 37,500 shares for $150,000 ($4.00 per share) caused him to realize short-swing profits in the sum of

$60,000. The basis of plaintiff's lawsuit is that the issuer has not recovered the $60,000 as provided for in section 16(b).

Riklis contends that the rescission date of the June 25 sale was on or before September 25, 1973, thereby precluding a "matching" with the September 28 purchase. While neither Riklis nor Devine can remember the exact date of the rescission, both claim that no payments were ever made to Riklis and that the stock was never transferred to Devine. In addition, Riklis maintains that Devine's personal unsecured promissory note was actually worth less than its face value of $160,000 and that it had a lesser value than the price at which any AITS stock was acquired by him.

 Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), provides in pertinent part:

> For the purposes of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, . . . shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months.

The overall purpose of the Securities Exchange Act of 1934 is "to insure the maintenance of fair and honest markets" in transactions of securities. 15 U.S.C. § 78b. Section 16(b) was designed to protect "outside" stockholders against short-swing speculation by insiders with advance information by the imposition of "a liability based upon an objective measure of proof." *Smolowe v. Delendo Corp.*, 136 F.2d 231, 235 (2d Cir. 1943), *cert. denied*, 320 U.S. 751, 64 S.Ct. 46,

88 L.Ed. 446 (1943). Thus the liability imposed by section 16(b) is absolute and is not dependent upon an actual misuse of inside information. The statute clearly imposes liability "irrespective of any intention on the part of such [insider]." *See Blau v. Lehman*, 286 F.2d 786 (2d Cir. 1960), *aff'd*, 368 U.S. 403, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962).

The Supreme Court has stated that "the only method Congress deemed effective to curb the evils of insider trading was a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great." *Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418, 422, 92 S.Ct. 596, 599, 30 L.Ed.2d 575 (1972).

 The necessary elements for a section 16(b) cause of action are: (1) a 10% beneficial owner, a director, or an officer; (2) a sale and purchase or a purchase and sale within the six-month period; and (3) a profit realized. *Landy v. United Fruit Co.*, 305 F.Supp. 254 (D.N.J.1969); *see Newmark v. R.K.O. General, Inc.*, 425 F.2d 348 (2d Cir.), *cert. denied*, 400 U.S. 854, 91 S.Ct. 64, 27 L.Ed.2d 91 (1970).

Plaintiff contends that Riklis's liability was fixed as of September 28, 1973 when Riklis purchased 37,500 shares at $4.00 per share. Profits for section 16(b) purposes are computed by arbitrarily matching purchases with sales in order to obtain the maximum amount of profits. Thus, the maximum profit is determined by a rule of lowest-price-in and highest-price-out within the six-month period. *Gratz v. Claughton*, 187 F.2d 46 (2d Cir.), *cert. denied*, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1951); *Smolowe v. Delendo Corp., supra.* The $60,000 profit alleged by plaintiff is based on matching the June 25th sale with the September 28th purchase. If Riklis and Devine rescinded their contract prior to September 28th the matching purchase would be August 9th, and the alleged profit would amount to $20,000.[1]

---

1. Plaintiff's figures are based on a sale price of $6.40 per share which was computed by valuating the unsecured promissory note at its full face value. Riklis maintains that the promissory note was worth much less than its face value.

Plaintiff argues that any rescission of a sale subsequent to a purchase is void by the terms of Section 29 of the Securities Exchange Act, 15 U.S.C. § 78cc. Section 29 states in pertinent part:

(a) Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter . . . shall be void.

(b) Every contract made in violation of any provision of this chapter . . . and every contract . . . heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter . . . shall be void . . . .

In support of this proposition, plaintiff relies on Volk v. Zlotoff, 285 F.Supp. 650 (S.D.N.Y.1968). In Volk, the defendants, who were officers of the issuer, Yoo-Hoo Chocolate Beverage Corporation ("Yoo-Hoo"), sold some of their Yoo-Hoo stock to raise the money necessary to exercise their stock options. The defendants exercised their options at the request of Yoo-Hoo because the corporation needed additional working capital. Yoo-Hoo's counsel advised the defendants that no section 16(b) liability would arise from the transactions, and based on this advice the defendants proceeded with the transactions, but the counsel later changed his opinion. Because of the possibility of section 16(b) liability, Yoo-Hoo's Board of Directors passed a resolution authorizing the rescission of the exercise of the stock options and a restoration of the parties to the status quo ante. The defendants entered into agreements with the corporation rescinding the sales and restoring the stock options.

The Volk court interpreted section 16(b) "in the broadest possible terms" because it is a remedial section. Thus, the court stated that the fact "[t]hat the insider may have intended to benefit the corporation or may have acted at the corporation's behest does not create immunity against Section 16(b) liability." Id. at 655. The Volk defendants argued that the rescission elimina-

ted any purchase and thus precluded a matching of the sales with a purchase. However, the Volk court held that the rescission was a futile attempt by the corporation and defendants to waive compliance with section 16(b) and that such a waiver was prohibited by section 29. In effect, the court fixed defendant's liability the moment the options were exercised.

Although the facts of Volk are similar to the case at bar, there are important distinctions. First, the Volk rescission was between the corporation and the defendants. By consenting to the waiver, the corporation relinquished its cause of action to recover the short-swing profits. Section 29 clearly voids such a corporate act, the sole purpose of which was to frustrate section 16(b). In the case at hand, the rescission was between two individuals, who wished only to nullify their private agreement. Devine stated that Riklis cancelled the deal at his request: Devine was afraid that he would be unable to meet the $160,000 obligation and told Riklis that he did not want to go through with the transaction. Deposition of Harold S. Devine, September 30, 1976, at 7–11. All of this was done orally, and there were no written records of the rescission. The situation is inapposite to that in Volk, where the sole purpose of the rescission was to avoid section 16(b) liability. Furthermore, in the instant case the issuer, AITS, did not take part in the rescission and did not waive its rights. Therefore, section 29 is inapplicable and will not serve to invalidate the rescission.

Second, in Volk, the rescission left the defendants in a better position than if the deal had remained in effect, for they retained both the profits from the sale and were also reinvested with the same stock options, which were exercisable at a later date. Here, however, Riklis did not receive any profits because the sale was never completed and thus did not improve his position by the rescission. It was these two facts, absent here—the corporate waiver of its section 16(b) cause of action and the bene-

fits the defendants received by virtue of the rescission—that convinced the *Volk* court to impose liability.

In *Volk*, the transactions were completed in the sense that the defendants had paid in full for the option shares and the stock was transferred to their names. Here, Riklis did not receive any interest payments or principal, only an unsecured promissory note. Furthermore, Riklis retained possession of the stock and never transferred title to Devine. Thus, in *Volk*, the parties attempted to undo a completed sale, whereas Riklis and Devine merely rescinded a still-executory contract to sell.

The Court is mindful that Section 3(a)(14) of the Securities Exchange Act, 15 U.S.C. § 78c(a)(14), broadly defines sale "[to] include any contract to sell or otherwise dispose of." Although it is not necessary to prove a consummated or closed purchase or sale to maintain a Rule 10b–5 cause of action, *Opper v. Hancock Securities Corp.*, 367 F.2d 157 (2d Cir. 1966); *Leasco Data Processing Corp. v. Maxwell*, 68 F.R.D. 178 (S.D.N.Y.1974); *Commerce Reporting Co. v. Puretec, Inc.*, 290 F.Supp. 715 (S.D.N.Y. 1968), there are no cases predicating section 16(b) liability on an unconsummated sale.

The June 25th agreement did not require an immediate transfer of the stock to Devine. The promissory note was due in one year, but Devine could have unilaterally extended its due date one year. Furthermore, the deal was rescinded prior to the tender of the first quarterly interest payment. Thus, Riklis never received one cent from Devine, and Devine never received one share of AITS stock from Riklis. In other words, plaintiff is seeking to penalize Riklis for not completing a short-swing deal.

■ As then-Circuit Judge Burger, sitting by designation, stated in *Adler v. Klawans*, 267 F.2d 840, 844 (2d Cir. 1959), the objective of section 16(b) "was not to punish but to deter the [insiders] from making improper use of information gained in a representative capacity. The practices could not be prevented *in toto* but Congress sought to take the profit out of what it considered improper conduct. It is plainly a remedial step . . . ."

■ If this Court voids the rescission, Riklis and Devine would be forced to complete a transaction which would produce short-swing profits and would violate section 16(b). Such a decision would clearly defeat the avowed purpose of section 16(b) —the curbing of short-swing transactions by virtue of its in terrorem effect. The fact that the transfer was rescinded prior to the transfer of title and prior to any payment on the note prevented Riklis from realizing any profit. Based on these unique circumstances and because "the statute is remedial, not penal," *id.* at 844, the motion for summary judgment is granted in favor of defendants and the complaint is dismissed. Submit judgment in accordance herewith.