### In re CASCADE INTERNATIONAL, INC., Debtor.

**Kenneth A. WELT, Chapter 11 Trustee for the estate of Cascade International, Inc., Plaintiff/Counter–Defendant,**

v.

**Lawrence MOSES, individually and d/b/a Pal Leasing Company, Defendant/Counter–Plaintiff/Cross–Plaintiff,**

v.

**Victor G. INCENDY, Fidelity Transfer Co., and Bernard H. Levy, Cross–Defendants.**

**Bankruptcy No. 91–33703–BKC–RAM. Adv. No. 92–0086–BKC–RAM–A.**

United States Bankruptcy Court, S.D. Florida.

April 4, 1994.

Lisa J. Chaiklin, Furr and Cohen, P.A., Boca Raton, FL, for Trustee.

Jeanne Baker, Baker & Moscowitz, Miami, FL, Daniel Bacine, Barrack, Rodos & Bacine, Philadelphia, PA, for Lawrence Moses.

## MEMORANDUM OPINION

ROBERT A. MARK, Bankruptcy Judge.

THIS CAUSE came before the Court on the Trustee's Renewed Motion for Partial Summary Judgment on a Complaint for turnover of property to the estate pursuant to 11 U.S.C. § 542. The basis for the complaint, originally filed by Cascade International, Inc. ("Cascade") as debtor in possession on February 4, 1992,[1] was that the defendant, Lawrence Moses ("Moses"), while a director of Cascade, realized profits from "short-swing" trades in Cascade stock, which pursuant to § 16(b) of the Securities Exchange Act inure to and are the property of Cascade.[2]

Moses' answer to the Complaint invoked the Fifth Amendment privilege against self-incrimination, which Moses requested to be

---

1. The Trustee was substituted as party for Cascade nunc pro tunc to February 7, 1992 by this Court's order of June 21, 1993.

2. Section 16(b) of the Securities Exchange Act, codified at 15 U.S.C. § 78p(b), provides in relevant part:

   For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer ... within any period of less than six months ... shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter....

considered a general denial, and alleged as an affirmative defense, *inter alia*, that the complaint was barred by the doctrine of *in pari delicto.*[3]  Moses also filed a counterclaim against Cascade and other parties, alleging a massive fraud on the part of Cascade, Victor Incendy (President, CEO and chairman of the board of Cascade), and others, with the known purpose to induce Moses to serve as a director and to be used as an "unwitting conduit" in a fraudulent scheme to distribute counterfeit stock.[4]  On March 6, 1992, Moses filed a motion to withdraw the reference of this adversary proceeding to the United States District Court and to consolidate the proceeding with other actions pending in that court.

On April 22, 1993, Cascade filed a motion for partial final summary judgment on the issue of liability, without seeking a determination of damages.  After hearing argument on May 25, 1993, this Court reserved ruling for sixty days to allow the District Court additional time to consider the motion to withdraw reference.  The District Court did not rule and the Trustee renewed the motion for summary judgment on July 29, 1993.  The renewed motion was heard on September 23, 1993.

Cascade was, at all relevant times, a publicly owned corporation whose stock was regularly traded on a national stock exchange.  Moses does not contest that he was a member of the Board of Directors of Cascade and a statutory insider under § 16(b), and was also the beneficial owner of PAL Leasing Company.  Moses also does not contest that individually and through PAL Leasing Company, he made numerous purchases and sales of Cascade common stock between January 1991 and October 1991, as described in Form 4's filed by Moses with the Securities and Exchange Commission.[5]  This Court has already ruled that the stocks traded by Moses were "equity securities" within the meaning of § 16(b), regardless of whether they were unauthorized or "counterfeit."

The only remaining issue that would preclude summary judgment is whether the defense of *in pari delicto* raised by Moses may bar the Trustee's recovery on behalf of Cascade.  The parties have submitted extensive memoranda of law on this issue.  After full consideration of the arguments briefed and addressed at hearing, and review of the relevant statutes and cases, the Court finds that: 1) *in pari delicto* is a potential defense to an action under § 16(b); 2) to establish the defense, the defendant must prove that the plaintiff had substantially equal responsibility for the wrongful activity, and that preclusion of the suit would not mitigate the effectiveness and purpose of the securities laws and their underlying policies; 3) there is no evidence in the record to suggest that Cascade bears substantially equal responsibility for Moses' short-swing trades in violation of § 16(b), thus failing to establish the factual predicate for *in pari delicto;* and 4) even if such facts existed, precluding this action would significantly mitigate the effectiveness of § 16(b)'s prohibition against short-swing trading and undermine that section's policies.  Thus, there is no genuine issue as to any material fact, and the Trustee is entitled to partial summary judgment on liability on its complaint for turnover of property to the estate.[6]

---

**3.**  "The equitable defense of in pari delicto, which literally means 'in equal fault,' is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." *Pinter v. Dahl*, 486 U.S. 622, 632, 108 S.Ct. 2063, 2070, 100 L.Ed.2d 658 (1988).

**4.**  The possibility of far-reaching fraud and other securities violations on the part of Cascade, Incendy and others presently is the subject of a plethora of lawsuits pending in the United States District Court for the Southern District of Florida.  Moses has been named or expects to be named as a defendant in many of these actions.  Victor Incendy and John Sirmans (Cascade's vice president) also were named as defendants in a criminal indictment in New York for conduct related to Cascade.

**5.**  The motion for summary judgment is only addressed to the issue of liability.  Accordingly, the measure of damages (i.e., the profits realized by Moses from these transactions) is not a subject of this opinion.

**6.**  On February 24, 1994, the Court announced its ruling on the record together with its findings and conclusions.  An order in accordance with the findings and conclusions was entered on March 9, 1994.  This Memorandum Opinion incorporates and supersedes the findings announced on the record.

## DISCUSSION

### I.

The first matter for determination is whether the defense of *in pari delicto* (hereafter, "IPD") is available at all in an action under § 16(b) of the Securities Exchange Act. Section 16(b) imposes strict liability on statutory insiders who realize a profit from short-swing trades in the stock of the company of which they are an insider. Determining the applicability of IPD to § 16(b) requires interpretation of the Supreme Court's decision in *Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). In *Pinter,* the court ruled that the IPD defense does apply, within a circumscribed scope, to an action under § 12(*l*) of the Securities Act for rescission of the purchase of unregistered securities. *Id.* at 635, 108 S.Ct. at 2072.

The Supreme Court held in *Pinter* that the applicability of the IPD defense to a § 12(*l*) action is determined by applying the test described in *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985). *Pinter,* 486 U.S. at 635–36, 108 S.Ct. at 2072. *Bateman Eichler* provides that IPD is available "only where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public." *Bateman Eichler,* 472 U.S. at 310–311, 105 S.Ct. at 2629.

■ Although *Pinter* did not specifically hold that the IPD defense was also applicable to an action under § 16(b), the clear effect of its language and reasoning is to make the defense at least potentially available in any private action under the Securities Act or Securities Exchange Act, including § 16(b): "Thus, we conclude that Bateman Eichler provides the appropriate test for allowance of the in pari delicto defense in a private action under *any* of the federal securities laws."

*Pinter,* 486 U.S. at 635, 108 S.Ct. at 2072 (emphasis added). Thus, the two-prong *Bateman Eichler* test governs whether the defense of *in pari delicto* is available to Moses in the instant action under § 16(b).[7] The viability of Moses' IPD defense depends on whether he can meet the criteria required by *Bateman Eichler.*

### II.

The first prong of the *Bateman Eichler* test provides that "a defendant cannot escape liability unless, as a direct result of the plaintiff's own actions, the plaintiff bears at least substantially equal responsibility for the underlying illegality." *Pinter,* 486 U.S. at 635–36, 108 S.Ct. at 2072. The *Pinter* decision further clarifies that "the plaintiff must be an active, voluntary participant in the unlawful activity that is the subject of the suit." *Id.* at 636, 108 S.Ct. at 2072.

■ Moses argues that genuine issues of material fact exist as to whether Cascade is "substantially equally responsible" for the transactions at issue. The basis for Moses' assertion is: 1) that Cascade has admitted, by its response to Moses' counterclaim, that Victor Incendy, through Cascade, carried on a massive fraud that included the issuance and distribution of counterfeit stock certificates; 2) that Cascade's interim chairman and general counsel, Aaron Karp, made similar admissions in a letter to shareholders in December 1991; 3) that the Bankruptcy Examiner's reports also conclude that Incendy and Cascade engaged in a scheme involving fraudulent stock certificates in order to allow the reporting of materially overstated earnings and income; and 4) that Moses has obtained a default on his counterclaims against Incendy and others alleging securities violations and common law fraud. Moses concludes that on the basis of these facts and admissions, a jury could find that Cascade was an active, voluntary participant in the unlawful activity that is the subject of this suit.

---

7. *Pinter* rejected the argument that IPD is not available in a strict liability action, in that a § 12(*l*) cause of action for rescission of the purchase of an unregistered security also creates strict liability. *See, Pinter,* 486 U.S. at 633–34,

108 S.Ct. at 2071: "We feel that the ... notion that the in pari delicto defense should not be allowed in actions involving strict liability offenses is without support in history or logic."

The facts and admissions relied upon by Moses may establish that Cascade, Incendy and others made fraudulent misrepresentations or issued and distributed unauthorized stock certificates. They have no bearing, however, on whether Cascade was an active, voluntary participant in the unlawful activity that is the subject of the present action—namely, Moses' realization of profits on short-swing trades in Cascade stock. The only relevant activities for the purpose of a § 16(b) action are the purchase and sale of Cascade securities by a statutory insider during a six month period. Moses has come forward with nothing that implicates Cascade in these actions.

The Supreme Court's application of the "substantially equal responsibility" test bears out Moses' failure on the threshold factual requirements. In *Pinter,* the plaintiff Dahl had invested in oil and gas leases with defendant Pinter. Dahl also informed other investors of the venture, who invested funds and completed subscription agreement forms prepared by Pinter which indicated that the interests were being sold without benefit of registration with the Securities and Exchange Commission. *Pinter,* 486 U.S. at 625–26, 108 S.Ct. at 2067.

When the venture failed, Dahl and the other investors sued for rescission of the sales under § 12(*l*) of the Securities Act for unlawful sale of unregistered securities. In defense, Pinter alleged that Dahl was *in pari delicto,* because Dahl's actions were a "pre-eminent factor in the violations he seeks to redress." *Id.* at 640, fn. 15, 108 S.Ct. at 2075, fn. 15. The Supreme Court found that the first prong of the test for IPD would be established if the plaintiff were "equally responsible for the actions that render the sale of the unregistered securities illegal—the issuer's failure to register the securities before offering them for sale, or his failure to conduct the sale in such a manner as to meet the registration exemption provisions." *Id.* at 636, 108 S.Ct. at 2073. Factors to consider included the extent to which the plaintiff and defendant cooperated in the scheme to distribute unregistered securities, and whether the plaintiff induced the issuer not to register. *Id.* at 637, 108 S.Ct. at 2073. On the record before it, the Court could not determine whether Pinter had met the factual threshold for the first prong.

In *Bateman Eichler,* investors sued corporate insiders and broker-dealers under § 10(b) of the Securities Exchange Act and SEC Rule 10b–5, alleging that the investors were fraudulently induced into purchasing securities by misrepresentations that the sellers conveyed material non-public information to them. *Bateman Eichler,* 472 U.S. at 301, 105 S.Ct. at 2624. The defendants argued that the tippees, by voluntarily choosing to trade on inside information, were equally responsible for any violation of the securities laws. *Id.* at 312, 105 S.Ct. at 2630. The Supreme Court found that the *in pari delicto* defense did not apply since the relative culpability of tipper and tippee is not substantially equal: 1) a tippee's conduct does not violate § 10(b) and Rule 10b–5 unless the tippee also owes a duty of disclosure, which arises only derivatively from an insider's duty; and 2) a tippee's conduct usually only amounts to a fraud against other individual shareholders, while an insider tipper breaches a fiduciary duty to the issuer, and also commits a fraud against the tippee.

Moses has placed nothing in the record to show that Cascade initiated, induced, or was responsible for Moses' transactions in Cascade stock during the periods alleged in the Complaint, much less that Cascade bears substantially equal responsibility.[8] In short, the *in pari delicto* defense is unsupported by any facts to satisfy the first prong of the *Bateman Eichler* test. Since the defense fails, the Trustee is entitled to partial summary judgment.[9]

---

**8.** The Supreme Court in *Pinter* remarked that mere knowledge of a violation (in this case, Cascade's likely knowledge of Moses' transactions) is insufficient to establish substantially equal responsibility for the purpose of IPD. *See Pinter,* 486 U.S. at 636, 108 S.Ct. at 2072.

**9.** Pursuant to *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), this Court shall enter summary judgment if the non-moving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof.

### III.

■ Even if there were facts linking Cascade to Moses' § 16(b) violations, denial of the IPD defense would nonetheless be mandated by the second prong of the *Bateman Eichler* test. The second prong requires that preclusion of the suit would not substantially interfere with effective enforcement of the securities laws and the protection of the investing public nor "offend the underlying statutory policies." *Pinter,* 486 U.S. at 637–38, 108 S.Ct. at 2073; *Bateman Eichler,* 472 U.S. at 311, 105 S.Ct. at 2629.

The stated statutory purpose of § 16(b) is to prevent "the unfair use of information which may have been obtained [by an insider] ... irrespective of any intention" on the part of the insider. 15 U.S.C. § 78p(b). The underlying statutory policies embodied in § 16(b) were described recently by the Supreme Court in *Gollust v. Mendell,* 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991): the statute is an "important part of Congress' plan ... to 'insure the maintenance of fair and honest markets,'" for which purpose "Congress enacted a 'flat rule ... taking the profits out of a class of transactions in which the possibility of abuse was believed to be great.'" *Id.,* 501 U.S. at 121, 111 S.Ct. at 2178, 115 L.Ed.2d at 118 (citations omitted). Section 16(b) is a remedial statute designed to ensure and maintain a "prophylactic standard of behavior" by imposing strict liability for an entire class of transactions, regardless of intent. *Synalloy v. Gray,* 816 F.Supp. 963 (D.Del.1993).

In applying the second prong of *Bateman Eichler,* this Court is mindful of the Supreme Court's guidelines in *Pinter* that "public policy implications be carefully considered before the [IPD] defense is allowed ... [which] ensures that the broad judge-made law does not undermine the congressional policy favor-

ing private suits as an important mode of enforcing federal securities statutes." *Pinter,* 486 U.S. at 633, 108 S.Ct. at 2071 (citations omitted). Here, a private suit is the *only* mode of enforcing § 16(b)'s prohibition against short-swing profits.

The circumstances in which IPD could be a valid defense to a § 16(b) action are very narrowly circumscribed by the purpose and policy of that section and the fact that an action on behalf of the corporation is the only means of enforcing its provisions.[10] From similar reasoning, decisions prior to *Pinter* almost universally found that equitable defenses are not available in a § 16(b) action. *See, e.g., Texas Int'l Airlines, Inc. v. National Airlines, Inc.,* 714 F.2d 533 (5th Cir.1983); *Magida v. Continental Can Co.,* 231 F.2d 843 (2d Cir.), *cert. denied,* 351 U.S. 972, 76 S.Ct. 1031, 100 L.Ed. 1490 (1956).[11]

Allowing Moses to avoid liability through an IPD defense would be inappropriate and contrary to the policy of § 16(b) and the securities laws in general. Although Cascade may have engaged in extensive fraudulent activities, including the issuance of unauthorized (and ultimately worthless) stock certificates, § 16(b) serves a much narrower purpose—to prevent insiders from profiting on short-swing trades in the stock of the company of which they are an insider. This Court can find no statutory purpose or policy served by allowing Moses to retain profits from trades of Cascade's stock, rather than returning those profits to Cascade as commanded by statute.

Moses argues that, due to the limited funds in Cascade's coffers and the fact that Cascade is in bankruptcy, any monies recovered from him on behalf of Cascade will go to creditors of Cascade rather than shareholders, and that the purpose of § 16(b) therefore will not be served. This argument fails

---

**10.** Conceivably, allowing the defense in all circumstances would permit an insider who controls the issuing corporation to manufacture his own IPD defense, allowing him to retain short-swing profits and rendering § 16(b) a nullity.

**11.** These cases did not specifically discuss IPD, and their holdings may be called into doubt by *Pinter's* determination that IPD potentially applies to any private action under the securities

laws. Even so, their reasoning still has some bearing on the analysis of the policies underlying § 16(b) under the second prong of the *Bateman Eichler* test. At least one District Court case, decided subsequent to *Pinter,* has suggested that equitable defenses to a § 16(b) action based on waiver, release or estoppel are insufficient "as a matter of law," although the case does not directly address *Pinter* or IPD. *See Synalloy v. Gray,* 816 F.Supp. 963, 969 (D.Del.1993).

to explain why Moses should thereby be entitled to a windfall from his profits, and does not alter this Court's analysis. He also argues that, because he is a defendant in several shareholders' class actions for securities law violations, requiring turnover to the estate will result in recovery from "the same source and for essentially the same wrong." This argument also is without merit. No other action in which Moses is named seeks recovery on behalf of Cascade for profits realized in contravention of § 16(b). Any liability Moses may have for other securities law violations is separate from his legal obligation to turn over any short-swing profits to Cascade under § 16(b).

Thus, the Court finds that even if there were sufficient facts to establish that Cascade was *in pari delicto* as to Moses' trades, precluding suit on behalf of Cascade would substantially interfere with effective enforcement of § 16(b) and would undermine its underlying policy to take the profit out of short-swing transactions by insiders. As such, under the second prong of the *Bateman Eichler* test, the defense must fail.

### CONCLUSION

Although the defense of *in pari delicto* potentially is available to a defendant in an action under § 16(b) of the Securities Exchange Act, Moses has presented no facts that would prove that Cascade bears substantially equal responsibility for the unlawful activities that give rise to this action. Moreover, allowing Moses to preclude recovery by the Trustee due to misconduct by Cascade would significantly mitigate the effectiveness of § 16(b)'s prohibition against insider profits from short-swing transactions. Thus, there is no genuine issue of material fact and the Trustee is entitled to partial judgment as a matter of law establishing liability on its complaint for turnover of property to the estate.